Hillsborough, }
Dec. 7, 1937. }

ELSIE PUTNAM, *Ex'x* v. SCOTT L. BOWMAN.

ELSIE PUTNAM v. SAME.

SCOTT L. BOWMAN v. ELSIE PUTNAM, *Ex'x.*

202

*Devine & Tobin* (*Mr. Tobin* orally), for Elsie Putnam both individually and as executrix.

*John J. Sheehan* and *Wason, Guertin & Leahy* (*Mr. Sheehan* orally), for Scott L. Bowman.

WOODBURY, J. The automobile collision which gave rise to these actions occurred after dark on the night of August 16, 1934, on the main highway between Milford and Nashua. One Dalrymple, who was operating Bowman's truck as the latter's servant, and who was acting within the scope of his employment, was halted by tire trouble shortly before reaching Nashua on his way from Milford. He drove his truck to the right partly off the paved portion of the road, jacked up the right rear wheel of the truck, removed the deflated tire, and then, finding that he lacked the tools necessary to make repairs, walked back toward Milford about half a mile to a house for the purpose of telephoning his employer.

While Dalrymple was away at the telephone Elsie Putnam and her husband, the latter driving his own car and she riding beside him on the front seat as a passenger, came up behind the Bowman truck and ran into it. The weather at the time was described as either raining or misting, foggy and dark. The headlights of the Putnam car were on but both Mr. and Mrs. Putnam testified, the former by deposition, that they did not see the defendant's truck before the moment of impact. The brakes on their car were not applied. The evidence is conflicting as to whether or not the lights of the truck were on, but it is undisputed that a red glass reflector designed to refract the light of approaching headlights was mounted upon the rear of the body.

Under the charge the jury were permitted to predicate a finding of legal liability on the part of the defendant either upon the ground of causal negligence, or for a causal violation of either the statute relating to lights, (P. L., *c.* 103, *s.* 6, as amended by Laws 1933, *c.* 105, *s.* 2), or of the statute relating to parking. Laws 1927, *c.* 76, *s.* 3. Since there was evidence that the truck was left standing partly upon the traveled portion of the highway when it could have been driven either further to the side or else a few feet further along the

highway to a point within the range of its headlights where it could have been driven completely off of the pavement; and since there was also evidence that it was left without lights, submission upon the above grounds was proper.

The defendant argues that under the rule of *Eastman* v. *Herrick*, 87 N. H. 58, it could not be found that his violation of the lighting statute was causal. This contention is without merit. It is based upon the proposition that because Mr. Putnam did not see the reflector he would not have seen the tail light had it been lit, and so that its unlighted condition, if found, could not be found to have had any bearing upon what later transpired.

Laws 1933, *c.* 105, *s.* 2, requires a rear light "visible for a distance of at least one hundred feet behind such vehicle." In addition thereto commercial vehicles are required to be equipped with a reflector of a design approved by the Motor Vehicle Commissioner, such reflector to be "located not less than twenty-four nor more than forty-eight inches above the ground and placed on the rear of the body of said vehicle, to the left of the center thereof, in such a manner as to show the extreme width of said vehicle and to reflect rays of light thrown upon such reflector." It does not appear that the reflector on the rear of the defendant's truck was of a design approved by the commissioner, and even if such fact should be made to appear the defendant's position would not be improved. The law does not require that the reflector shall be of equal visibility to the legal tail light, nor does it anywhere appear in the record that in the instant case it was so in fact. The reflector is not required as a substitute for a tail light but in addition thereto. It is an auxiliary not a substitute means of warning. Its primary purpose is not to indicate the presence of a commercial vehicle but to indicate its width. Since it does not appear that the reflector was of equal efficiency to a tail light as a means of warning it cannot be said that the plaintiffs must have been able to see it as readily as they could have seen a lighted tail light and the defendant's premise fails.

The defendant's further contention that the parking statute, (Laws 1927, *c.* 76, *s.* 3), does not apply because his truck was disabled is equally without merit. This statute does not make the disability of a motor vehicle the test of its applicability. It provides that it "shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position."

Whether or not the failure of the right rear tire of a truck loaded with boxes of apples was a disability of such magnitude as to render it impossible to avoid leaving the truck as the defendant's servant did was a question of fact which the court properly submitted to the jury.

The defendant's contention that his fault, if found, was not the proximate cause of but only the occasion for the accident does not require discussion. *Fontaine* v. *Charas*, 87 N. H. 424; *Laflamme* v. *Lewis*, *ante*, 69.

The record does not disclose conclusive evidence of Mr. Putnam's contributory fault. Some witnesses estimated his speed before the accident as low as twenty miles per hour, others as high as thirty-five. We cannot say that a speed of twenty miles per hour, under the conditions which obtained at the time and place of the accident, was necessarily negligent.

Greater reliance, however, is placed by the defendant upon the fact that neither plaintiff observed the truck before colliding with it, and upon the further fact that Mr. Putnam in his deposition testified that although he did not remember seeing any cars, approaching him from the opposite direction just before the collision, he could not explain the accident "unless it could have been that this truck was in the middle of the road and a car was coming. That is the only way I can explain it."

The rule of *Harlow* v. *Leclair*, 82 N. H. 506 does not apply. Mr. Putnam's statement is not clear and definite to the effect that no car approached him just prior to the accident, nor does the statement concern a matter about which he could not honestly be mistaken. *Feuerstein* v. *Grady*, 86 N. H. 406, 409 and cases cited. He only said that he did not "remember seeing any," and his lack of memory of such a commonplace event can be explained by the shock of the accident which followed. The testimony of other witnesses that a car going toward Milford did pass the Putnam car just before the accident was competent, and it is sufficient to raise the inference that its headlights might have momentarily blinded Mr. Putnam so that he could not have seen the defendant's unlighted truck.

There being no evidence of Mr. Putnam's unsuitability as a driver, the contention that Mrs. Putnam was guilty of contributory negligence as a matter of law because she entrusted her safety to her husband and failed to maintain an active lookout for herself, does not require discussion. *Salvas* v. *Cantin*, 85 N. H. 489; *Vidal* v. *Errol*, 86 N. H. 1; *Mason* v. *Andrews*, 86 N. H. 277; *Gilbert* v. *Joyal*, *post*———.

The defendant's motions for nonsuits and directed verdicts were properly denied.

Counsel for the plaintiffs argued as follows: "You know when you pass a car, particularly on a rainy, misty night, there is a blind spot, and with that object where it ought not to have been, without lights, parked there on the highway, the lights from the Flaherty car blinded Mr. Putnam for the split portion of a second, and he went that thirty-seven or forty feet into that truck." To this, objection was made on the ground that "there is no evidence that the lights blinded him," and exception was claimed "to that whole line of argument."

Although there is no direct evidence that Mr. Putnam was blinded by the lights of the car approaching him, common knowledge is sufficient to raise the inference that he might have been. It is well known that immediately after passing a lighted car proceeding in the opposite direction one's vision is momentarily impaired even when those lights are deflected downward, and it is also a well known fact that this condition is aggravated by rain or mist. Since there was no evidence that Mr. Putnam was not in fact blinded by the lights of the Flaherty car the inference that he was so blinded is one of which the evidence is capable. This argument merely restates and emphasizes Mr. Putnam's explanation of the reason for his failure to see the defendant's truck in season to have avoided running into it.

The defendant requested an instruction to the effect that no violation of the parking statute (Laws 1927, c. 76, s. 3) could be found if it should appear that when the defendant stopped his truck there was opposite it "more than ten feet of unobstructed width of the main traveled portion of the highway." This request is based upon a misconception of the statute. That statute is violated regardless of lights and view, if a vehicle is left on a main highway in such a manner that there is less than ten feet of main traveled road opposite it free for the passage of other vehicles. Even if there is such space available, still the statute is violated when a vehicle is left unlighted after dark, or when, either before or after dark, it is left on the highway at a place where it may not be clearly seen for a distance of at least two hundred feet in each direction. The requirements are not alternative, as the request assumes, but cumulative. The statute is designed to prevent blocking a main highway as well as to prevent the creation therein of hidden dangers to other travelers. The above request was properly refused.

Exception was also taken to the refusal of the court to require that

the jury specify in their verdict in the first case the amount awarded respectively for personal injuries, for property damage and for expenses paid by Mr. Putnam for the injuries sustained by his wife. "Whether a jury shall be required to return with the general verdict answers to special questions is a matter of expediency for the determination of the presiding justice." *Beckley* v. *Alexander*, 77 N. H. 255, 258. There being nothing to indicate any abuse of discretion, no exception lies to the refusal of the court to adopt the procedure suggested by this request. *Elwell* v. *Roper*, 72 N. H. 585, 586; *Bridges* v. *Company*, 85 N. H. 220, 231.

It was not error to refuse certain of the defendant's other requests because they "were either based upon part only of the material evidence or else gave undue prominence to portions of the evidence to the exclusion of other portions equally material." *Smith* v. *Railroad*, 88 N. H. 430, 435. His remaining requests were either covered in substance by the charge as given, or else the questions of law therein raised have received consideration elsewhere in this opinion. To canvass them in detail would be fruitless.

*Judgments on the verdicts.*

All concurred.