Grafton,
No. 5281.

LAWRENCE H. HANEY

*v.*

WILLIAM T. BURGIN.

Argued December 2, 1964.
Decided March 31, 1965.

*Eugene S. Daniell, Jr.* (by brief and orally), for the plaintiff.

*Devine, Millimet, McDonough, Stahl & Branch (Mr. Joseph A. Millimet* orally), for the defendant.

WHEELER, J. The first contention of the defendant is that it was improper for the Court to grant three successive motions to increase the ad damnum when, it is alleged, plaintiff's counsel was aware of the nature of the case prior to trial.

The ad damnum in plaintiff's writ was in the sum of $15,000. On January 27, 1964, the first day of the trial, the Court granted plaintiff's motion to increase the ad damnum to $25,000; on January 29, 1964, the third day of the trial, the Court granted plaintiff's motion to increase the ad damnum to $50,000; and on April 6, 1964, after verdict, the Court granted plaintiff's motion to increase the ad damnum to $100,000.

Defendant argues that the granting of the several motions to increase the ad damnum misled defendant's counsel to the extent that if they had been forewarned of the seriousness of plaintiff's injuries prior to trial, orthopedists and neurosurgeons would have been employed at a much earlier date and a second counsel would have been assigned to the case and a thorough investigation of the plaintiff would have been made. As a result of which they contend the trial resulted in an injustice since it has not been tried on its merits and that justice demands a new trial.

RSA 514:9 provides: "Amendments in matters of substance may be permitted in any action, in any stage of the proceedings, upon such terms as the court shall deem just and reasonable, when it shall appear to the court that it is necessary for the prevention of injustice; but the rights of third persons shall not be affected thereby." See *Brown* v. *Brockway*, 87 N. H. 342, 343; *Mansfield* v. *Finance Corp.*, 99 N. H. 352, 356; *Derby* v. *Company*, 100 N. H. 53, 62.

Plaintiff was examined on May 28, 1963 by defendant's Dr. Crane who made a diagnosis of "mild neck strain." Shortly thereafter he examined the X-rays and reported to defendant ". . . they appear normal save for the upper thoracic vertebrae.

There is evidence of old change consistent with the clinical findings of kyphosis."

Six days before trial at defendant's request plaintiff was examined a second time by Dr. LaFrance, an orthopedic surgeon who reported in part: "His chief complaint at the present time is that he cannot turn to the right well. He can flex and extend his neck fairly well, but he can only turn to the left about half way without it hurting him. He gets some pain in the neck at different times and occasionally gets some numbness apparently in the little finger, thumb and index finger of the left hand." Dr. LaFrance further reported plaintiff had a "sprained neck" and as a result ". . . has some pain and difficulty in moving his head to the left." The defendant, as plaintiff's counsel points out, had some advance warning that plaintiff had not fully recovered.

During the construction season of 1963 plaintiff attempted to continue working on a bulldozer. He had to keep getting off the machine because his back was aching. He suffered headaches and pains in his neck. Because of this disability he was discharged from work. He secured a position in Vermont operating a scraper which paid 56 cents per hour less. During the year he lost over $2,000 in wages.

Plaintiff's counsel alleges that he learned for the first time on January 25, 1964 from Dr. Halfman, an orthopedic surgeon, that the plaintiff had a broken back and a ruptured intervertebral disc. This information resulted in the motion to increase the ad damnum to $25,000. In granting this motion we find the Court committed no abuse of discretion.

On the third day of the trial the plaintiff introduced medical testimony that he was 25% disabled. Dr. Halfman testified that the plaintiff had a broken back with permanent deformity, a residual pain, and at least one ruptured cervical disc. He did not recommend either a myelogram or an operation and was of the opinion that plaintiff could not return to heavy construction work.

The defendant's only witness was Dr. Robert Fisher, neurosurgeon of the Mary Hitchcock Clinic. In substance Dr. Fisher confirmed the diagnosis of Dr. Halfman. The fact that Dr. Fisher examined the plaintiff for only 15 minutes before taking the stand cannot be charged against plaintiff's counsel nor can the defendant's failure to call Drs. Crane and LaFrance as witnesses.

Plaintiff's counsel "[o]n the basis of Dr. Fisher's unexpected and overwhelming support, plus the failure of defendant to make any defense" moved to increase the ad damnum to $50,000 which was granted by the Court.

The jury returned a verdict for $87,345 which resulted in plaintiff's motion to increase the ad damnum to $100,000 which was granted by the Court.

The defendant charges that the increases in the ad damnum "occurred gradually and surreptitiously." There is no evidence that plaintiff's counsel misled defendant or acted "surreptitiously" but rather, it could be found that he acted solely in the best interest of his client on the basis of new medical evidence. The record is bare of any request for a continuance. In granting the motions to increase the ad damnum the Court did not abuse its discretion and the defendant's exceptions are overruled.

The next question presented is whether the verdict of $87,345 is excessive based on the evidence in the case. "In most jurisdictions the view is taken that the trial judge, because of his more favorable position to determine the weight of the evidence and assess all the circumstances involved, may more freely interfere with the verdict than the appellate court and that his decision on this question will be given great weight in passing upon the question on appeal." *Chagnon* v. *Union-Leader Co.*, 103 N. H. 426, 446, and cases cited.

In oral argument here defendant's counsel contends that the jury were misled as to the extent of the treatment given the plaintiff by Dr. Halfman. He testified that he first examined the plaintiff on October 4, 1963 and again at his office in January, 1964, and that plaintiff was examined by his associate Dr. Garger who likewise specializes in orthopedics, and had the benefit of his examination in diagnosing plaintiff's injury. Dr. Halfman further testified: "I saw him several times in the office. . . . The bill is $55.00." Opportunity was available to defendant's counsel on cross-examination to probe the extent of the doctor's examination of the plaintiff. We do not believe the jury could have been misled.

The plaintiff was 40 years old and in excellent health at the time of the accident. As a result of the accident it could be found that he received a fractured back involving the third thoracic vertebrae which resulted in a "goose neck" and rupture of one or two cervical discs with nerve involvement. The plaintiff suffers considerable pain in his back and neck. The defendant's

own expert, Dr. Fisher, testified "His neck still hurts him a great deal." It was findable that he should not go back to operating heavy equipment.

At the time of the trial plaintiff was working for the International Packing Company in Bristol. His average weekly pay varied between $60 to $70 per week. In 1959 he earned $6,625. In 1960 $7,316; 1961 $7,437; 1962 $3,445, the difference from previous years being occasioned by his wife's illness; 1963 $7,365.

The plaintiff testified that bulldozer operators because of the vibration of the machine cannot operate beyond the age of 55 years, although some do to the age of 62 years. It was thus findable that the plaintiff, if in good health, had from 15 to 22 years to continue his regular employment.

Plaintiff was injured on February 22, 1963. He was an experienced operator of heavy equipment, bulldozers and scrapers weighing 140,000 and 170,000 pounds. His earnings for the years 1959 — 1961 averaged $7,125 per year. Because of his wife's illness his earnings in 1962 were $3,445. However, he earned $7,365 in 1963. At the time of the trial it could be found that because of the effects of a rupture of one or two cervical discs with nerve involvement resulting from the accident his condition was such that he should not return to operating heavy equipment. His only other employment in recent years was at an hourly rate of $1.66 which would give him a yearly earning of $3,640 or $4,000 with overtime.

The jury could find that plaintiff would thus incur a yearly loss in his earnings of $3,125 ($7,125 — $4,000). It could also be found on the evidence that the plaintiff could have worked twenty-two years as a heavy equipment operator and that his future loss of wages would be $68,750 ($3,125 x 22). In addition to his special damages and lost wages, the plaintiff was entitled to recover also for pain and suffering.

On the basis of the record the verdict was not unreasonable.

Defendant's counsel calls our attention to the fact that "[o]ne of the facts of modern life is that in an ever-increasing number of cases, the Courts find some issue for the jury" and "that this case presents a classic challenge to this Court to exercise the undoubted power which it possesses to set aside such a grossly excessive verdict."

It may seem trite to suggest that this court is not a fact-finding forum and must consider the evidence in all cases most

favorable to the plaintiff on the cold record before it. The trier of the facts who sees and hears the witnesses is in a more favorable position to judge the weight of the evidence. We cannot say that the Trial Court's denial of defendant's motion to set the verdict aside as excessive was erroneous as a matter of law.

Because of an inquiry by the jury to the Court if "any settlement" would be subject to the Federal income tax defendant's counsel suggests that this court should now consider the question of whether an instruction should be required that verdicts in personal injury cases are not income subject to the payment of income taxes. Admittedly the defendant took no exception to the answer returned by the Trial Court to the jury, to the effect that if their verdict was for the plaintiff it should be arrived at without consideration of the income tax. Therefore, we see no reason to consider the matter in this case. *Fitch Company v. Insurance Company*, 99 N. H. 1.

We next turn to the consideration of the Court's denial of the defendant's motion for a new trial. This motion was supported by two affidavits. Dr. Fisher stated in substance that since the trial he had been shown some motion pictures of the nature of the work performed by the plaintiff, including motion pictures of the plaintiff actually performing the work and that if this evidence had been available at the time of the trial his testimony would not have conceded that the plaintiff's injury was such as to prevent him for performing his usual work. The second affidavit was from Ralph Salvucci, a former employer, who stated that before the accident the plaintiff "always held himself in a hunchbacked position."

A party is entitled to a new trial on the ground of newly discovered evidence if it appears (1) that the party presenting the petition was not at fault for not discovering and presenting the evidence at the former trial, (2) that the evidence is material and not cumulative and that it goes to the merits of the case and (3) that the evidence is of such a character that it is probable that a different result would be reached. *McGinley* v. *Railroad*, 79 N. H. 320.

The denial of defendant's motion for a new trial presents the question of whether there was an abuse of discretion on the part of the Court. *Musgrove* v. *Cicco*, 96 N. H. 141, 143. We think a short answer to the defendant's contention is that the evidence as to the nature of the work done by the plaintiff after the accident was available and known to the defendant at the time of

the trial. The Trial Court could also properly find that the proffered evidence was cumulative and that it was not probable that a different result would be reached. In the denial of the motion we see no abuse of discretion.

Lastly the defendant contends that the Court was unjustified in withdrawing the issue of contributory negligence from the jury.

The plaintiff was a passenger in the motor vehicle. He knew that he was in a line of traffic and that there were cars ahead. It could be found he never saw the defendant before the vehicle he was in was struck in the rear. No evidence was introduced to dispute this testimony. In this state of the evidence the plaintiff had no opportunity to take saving action. The exception is overruled.

*Exceptions overruled.*

Duncan, J., did not sit; the others concurred.