Rockingham,
No. 6457.

JOHN W. JACKSON

*v.*

MICHAEL A. LEU-PIERRE AND UNITED SUPPLY CO.

November 3, 1972.

*Shaines, Madrigan & McEachern (Mr. John H. McEachern* orally) for the plaintiff.

*Boynton, Waldron, Dill, Nadeau & Aeschliman* (*Mr. Richard Dill* orally) for the defendants.

GRIMES, J. Action in tort for personal injuries arising out of an automobile accident which occurred on August 15, 1968, in Nashua. The jury returned a verdict for the plaintiff in the amount of $23,800.00 and defendants' exceptions were transferred by *Grant,* J. Defendants claim that the trial court erred in granting plaintiff's motion to increase his ad damnum from $13,500.00 to $40,000.00 at trial, in not submitting special verdicts on damages, and in not setting aside the verdict on the basis that it was the product of speculation, was contrary to the weight of the evidence and excessive, and in failing to instruct on the duty of the plaintiff to mitigate his damages.

The plaintiff's original writ, dated October 24, 1968, contained an ad damnum in the amount of $12,000.00. By motion granted by agreement on September 9, 1969, this was increased to $13,500.00 due to the addition of a claim for property damage. In a letter dated February 16, 1970, to defendants' attorneys, plaintiff's attorneys stated that in view of their doctor's report, a demand of $25,000.00 was being made without prejudice. By letter dated June 6, 1970, this offer was repeated, and by letter dated October 30, 1970, defendants' counsel discussed the offer including wages, property damage and medical expenses. Defendants' counsel agreed that, although they had had difficulty in locating defendant Leu-Pierre, his absence would not constitute a cause for continuance, and the case could be tried on his answers to interrogatories.

A jury was drawn on December 7, 1971, and was sent on a view to return the next day. On December 8, 1971, plaintiff's motion of even date to increase his ad damnum to $40,000.00 was filed and granted over the defendants' objection and exception. Defendants although acknowledging a demand of $25,000.00 claimed surprise and alleged an inability to determine if the new ad damnum was in excess of coverage and whether another carrier needed to be notified but did not seek a continuance.

There is no claim before us that either the new ad damnum or the amount of the actual verdict exceeded the insurance

coverage. *See Valliere* v. *Filfalt,* 110 N.H. 331, 266 A.2d 843 (1970). Defendants' argument in this court is based on denial of an opportunity for more extensive medical discovery and the fact that the agreement at pretrial to proceed without Leu-Pierre was based on a claim of $13,500.00. These claims do not appear to have been presented to the trial court. We cannot say that on the record before us that the trial court abused its discretion in allowing the amendment. *Haney* v. *Burgin,* 106 N.H. 213, 208 A.2d 448 (1965).

Defendants' exception to the failure to submit special verdicts on damages must also be overruled. This is also a matter which is within the sound discretion of the presiding justice (*Beckley* v. *Alexander,* 77 N.H. 255, 90 A. 878 (1914)), and we find no special circumstances in this case as would justify us in finding an abuse of that discretion. *Bridges* v. *Company,* 85 N.H. 220, 156 A. 697 (1931); *Putnam* v. *Bowman,* 89 N.H. 200, 195 A. 865 (1937).

Neither can we say that the verdict was excessive as a matter of law as contended by the defendants. Plaintiff had retired in January 1966 after twenty-five years in federal government service as a technician, an inspector, and in the later years in quality control in construction projects. He had done pipefitting prior to entering government service and after retirement had worked as a pipefitter earning, he testified, on an average of about $8,000.00 per year before the accident.

He injured his neck and shoulders in the accident and continues to suffer pain and discomfort. His doctor testified that his injuries are permanent. His life expectancy was 11.6 years, and it was findable from the evidence that he will suffer discomfort for the rest of his life. He testified that the injury prevents him from doing overhead work or heavy pulling which constitutes much of a pipefitter's job. He lost some time from his work following the accident, went back for a couple of weeks and then again until he was laid off due to a reduction in force. He took the winter of 1968-69 off as he intended to do, and then worked from May 1969 to April 1970, when he volunteered to be one to be laid off due to a reduction in force. He claimed, however, that the work on that job was not overhead work. There was

testimony that his inability to do overhead work would reduce his ability to compete in the labor market as a pipefitter.

His special damages, including medical expenses of $158.30 and automobile damage, totalled $2,002.14. This leaves $21,797.86 for pain and suffering and loss of earning capacity. The jury could have found that but for the accident, plaintiff would have worked another two years or longer. Considering this and the evidence of pain and suffering, we cannot say that this verdict exceeds any rational appraisal of the damages or is manifestly exorbitant. *Cf. Loney* v. *Parsons,* 111 N.H. 353, 358, 284 A.2d 910, 914 (1971).

Defendants requested an instruction which read in part as follows: "The plaintiff has a duty to alleviate his damages and if you find he did not act reasonably to restore himself to his prior earning capacity, you must consider it in determining damages." This request was not given although the court did instruct the jury that the plaintiff had the duty to mitigate his damages by following prescribed treatment. Defendants excepted to the court's failure to give the requested instruction and called attention to the fact that, although mitigation with respect to treatment was mentioned, "nothing was mentioned about the requirement of mitigating damages by seeking employment or continuing employment."

Defendants now argue that their request referred to a duty to seek work in other fields of employment outside of pipefitting. Although it is doubtful that the presiding justice would have so understood the defendants' claim either from their request or the statement following the charge, nevertheless the failure to give the instruction was not error. The question of the availability of pipefitting work was explored by the defendant in cross-examination of the plaintiff. The record before us discloses no issue at the trial with respect to the availability of any different work which the plaintiff might have been capable of undertaking. A request for instructions upon an issue not supported by evidence is properly denied. *Watson* v. *Company,* 96 N.H. 487, 79 A.2d 9 (1951); *see Lamarche* v. *Granite State &c. Co.,* 101 N.H. 210, 213, 138 A.2d 674, 676 (1958); *George* v. *Smith,* 105 N.H. 100, 193 A.2d 16 (1963). The exception is overruled.

We have examined other claims of the defendants and find them to be without merit.

*Exceptions overruled;*
*judgment on the verdict.*

All concurred.