Hillsborough
No. 6839

MYRTLE M. BORN

v.

KENNETH HUDSON, INC.
d.b.a. HUDSON BUS LINES

ELROY M. BORN

v.

SAME

July 31, 1974

*Nixon, Christy & Tessier (Mr. Robert Christy* orally) for the plaintiffs.

*Stein, Gormley & Morrill (Mr. Morris D. Stein* orally) for the defendant.

LAMPRON, J. Actions for personal injuries by husband and wife who were paying passengers in a limousine operated by the defendant, a common carrier, through its agent Lemay. The limousine struck the rear of a bread truck on Interstate 93 in Andover, Massachusetts, on June 25, 1971. The parties agreed that New Hampshire law was to govern these actions. No claim of contributory negligence was made by the defendant. Trial by jury before *Flynn,* J., resulted in a verdict of $28,500 for plaintiff Elroy and $1,208 for his wife Myrtle. Defendant's exceptions particularly to the denial of its motions to set aside and to reduce the verdict in the action of Elroy Born were reserved and transferred.

In determining the merits of these exceptions, the evidence with all reasonable inferences therefrom, must be viewed in the light most favorable to the plaintiffs with all conflicts therein to be resolved by the jury. *Walker v. Walker,* 106 N.H. 282, 286-87, 210 A.2d 468, 471-72 (1965). The defendant's limousine was proceeding north on Interstate 93 which is a divided highway separated by a median strip. About 300 to 400 yards south of the scene of the accident it occupied the right of the three northbound lanes. The driver then observed a bread truck about 75 feet away coming onto Interstate 93 and he moved the limousine to the center lane. He then observed a blue car about 200 feet to his rear with its right blinker flashing and "I moved over a little bit [toward the right lane] to give him a chance and at the same time I hit the truck." The bread truck remained in the right lane at all times. The right front mudguard, front bumper, and grille on the limousine were damaged. The impact between both vehicles was "pretty hard." When asked whether the accident was his fault, defendant's driver responded: "It was maybe really my fault. If I had stayed in the center lane it wouldn't have happened maybe." We hold that the evidence warranted a finding that defendant's driver failed to keep a proper lookout and to keep his vehicle under proper control under the circumstances and that his negligence was the sole proximate cause of the accident. *Poulin v. Provost,*

114 N.H. 263, 319 A.2d 296 (1974); *Quint v. Porietis*, 107 N.H. 463, 225 A.2d 179 (1966).

Defendant complains that the testimony of Dr. Terragni (who treated the plaintiffs at the time of the accident) regarding the extent of Elroy Born's neck injuries was admitted at the trial in violation of pretrial orders that medical reports or oral or written statements of doctors would be inadmissible unless exchanged ten days after the order. The evidence complained of was admitted without any objection on the part of the defendant. Thus the trial court was not given an opportunity to determine if the testimony came within the order, and, if it did, whether the interests of justice demanded its admission or exclusion. *Skivington v. Robinson*, 106 N.H. 493, 213 A.2d 921 (1965); *Lynch v. Bissell*, 99 N.H. 473, 116 A.2d 121 (1955). Not having been raised at the trial, the issue will not be considered on appeal. *Wiggin v. Kent McCray Co.*, 109 N.H. 342, 348, 252 A.2d 418, 423 (1969).

Defendant's motion to reduce the verdict of $28,500 in favor of plaintiff Elroy Born was denied by the trial court and its decision will not be set aside unless no reasonable person would make it. *Roy v. Levy*, 97 N.H. 36, 40, 79 A.2d 847, 851 (1951). There was evidence that the plaintiff was 62 at the time of the accident, in good health, and earning $250 a week as a mechanical engineer. At the time of the trial he had a life expectancy of 13.2 years. When the crash occurred he hit the back of the seat in front of him and "I just seemed to snap and everything was quite hazy." He was taken to a hospital in Manchester complaining of "a terrible, terrible headache and my neck was very painful on the left side". The x-rays showed a straightening out of the normal curve in the neck which Dr. Terragni testified was caused by muscle spasms. This was the result "of the type of snapping forward that the man's head and neck had undergone on his trunk with the impact of the automobile accident."

Dr. Watson, plaintiff's family physician in Minneapolis, Minnesota testified by deposition that such a strain will produce "some torn muscle fibers and the tearing of these muscle fibers may cause bleeding into the muscle body, which produces swelling and pressure which secondarily will tend to produce muscle spasm." Plaintiff was hospitalized in

Manchester from June 26 to June 30, 1971, and later in Minneapolis from July 19 to July 26. Severe headaches which prevented him from sleeping continued, but with less frequency, to the day of the trial in June 1973. The rotation of his neck is severely impaired, which disability is accentuated by the fact that because of the previous loss of one eye he must turn his head to make up for that lack of vision.

When examined by Dr. Watson on April 4, 1973, he had less neck motion than he had in October 1972. Dr. Terragni testified that when the plaintiff left Manchester in June 1971 "I felt with the severity of the whiplash, with the severity of the injury functionally as far as the man's ability to be able to move his head and neck in a normal manner, with the degree of pain still existing . . . that his recuperation would not be an easy one." At the trial in June 1973 this same doctor testified that "it would be reasonable to assume whatever complaints and disabilities he has now after two years I would have to consider to be of a permanent nature." He also testified that the pains and disabilities were causally related to his accident. Plaintiff has incurred medical bills of $1474.15 and has lost about 30 working days. We cannot say on the record before us that the trial court abused its discretion in denying defendant's motion to reduce the amount of the verdict or that the verdict "exceeds any rational appraisal of the damages or is manifestly exorbitant." *Jackson v. Leu-Pierre,* 112 N.H. 406, 409, 296 A.2d 902, 904 (1972).

*Exceptions overruled.*

All concurred.