UNITED STATES of America,
Appellant,

v.

John R. BARLETTA, Defendant,
Appellee.

No. 81–1255.

United States Court of Appeals,
First Circuit.

Argued May 7, 1981.

Decided June 29, 1981.

Amos Hugh Scott, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellant.

Marshall D. Stein, Boston, Mass., with whom Julian Soshnick, Boston, Mass., was on brief, for defendant, appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, WYZANSKI, U. S. District Judge.*

COFFIN, Chief Judge.

The United States appeals from an order of a district court, 512 F.Supp. 220, refusing to admit into evidence in a criminal trial a tape recording of a conversation between the defendant and a government informant.

The procedural history of this matter is set forth in our prior opinion in this case, *United States v. Barletta*, 644 F.2d 50 (1st Cir. 1981), and the court's subsequent reaffirmance of the earlier order discussed in that opinion forms the technical basis for this appeal. The court's reasons for excluding the tape, however, are most fully addressed in a published opinion explaining the earlier order:

"At the time of the government's proffer, the record established that the taped telephone conversation took place approximately three years after the alleged conspiracy commenced, and about six months after it had allegedly concluded. The

telephone conversation was initiated by the informer at the government's request. The call was monitored and taped by the government with permission of the informer. It is reasonable to infer that the purpose of the informer's call was to obtain an admission from the defendant that he had participated in criminal conduct several months before. Having this background, I read the transcript of the taped call and also listened to the tape. While the informer's comments and questions were clearly intended to serve as an inculpatory net, they were so convoluted and complex that the import of defendant's responses was at best ambiguous. Indeed, defendant's clearest responses appeared exculpatory.

"And so I excluded the tape for two reasons. First, I was persuaded that the tape could not fairly be viewed as an admission despite the attempts of the informer to provoke an inculpatory response. Second, given the totality of the aforementioned circumstances, I regarded the potential prejudicial impact of the tape, particularly its ethnic reference, to substantially outweigh any probative value. *See* Fed.R.Evid. 403. For both reasons, I sustained defendant's objection." *United States v. Barletta*, 492 F.Supp. 910, 911–12 (D.Mass.1979).

The court's apparent intention with respect to the first reason stated was to find the statements inadmissible hearsay on the ground that they were not admissions by the defendant within the scope of Fed.R. Evid. 801(d)(2). Three problems, however, inhere in such a ruling. First, the court's reliance on a finding that the defendant's statements are exculpatory rather than inculpatory is, as the defendant apparently concedes on appeal, rendered erroneous by the fact that a statement need not be inculpatory or against interest to be admissible under Rule 801(d)(2). *See United States v. Matlock*, 415 U.S. 164, 172, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1972); *United States v. Rios Ruiz*, 579 F.2d 670, 676 (1st Cir. 1978); McCormick, *Evidence* § 262 (Cleary ed. 1972); J. Weinstein & Berger, 4 Weinstein's *Evidence* ¶ 801(d)(2)(A)[01] at 801–116 to

117. Second, only three statements by the informant were offered by the government as admissions adopted by the defendant. All other statements by the informant, and all statements by the defendant, are, we think, not hearsay at all. The latter are a party's own statements, admissible under 801(d)(2)(A), while the former, being offered to provide a context for the defendant's statements rather than for the truth of what they assert, are not hearsay under 801(c). Accordingly, Rule 801(d)(2) is of no application to these statements.

Third, the court's ruling that the three contested statements by the informant were not adopted as admissions by the defendant presents a difficult question of decisional standards. Rule 104(a) states the general principle that preliminary questions concerning admissibility are to be decided by the court, but does not indicate the standard by which they are to be decided. The court's role in ruling on the admissibility of evidence generally suggests that it should rule on the basis of its own factual assessment. But the "adoption" question comes within a special subclass of preliminary questions, those which present precisely the same question as an ultimate issue of fact in the case, which we think demands a different standard: to preserve the proper allocation of responsibilities between judges and juries, such questions ought to be decided by the latter. Thus the court's role in these instances is not to make a factual determination, but rather to rule as a matter of law whether a reasonable jury could properly find the ultimate fact in favor of the proponent of the evidence. Indeed, to hold otherwise—to deny the jury the possibility of making a particular factfinding simply because the court would determine the fact otherwise—might in criminal cases deprive a defendant of his Sixth Amendment right to have his case tried to a jury. Read in this light, then, we think the "preliminary" question to be decided by the court under Rule 104(a) is properly understood in such instances to be the question of law whether a reasonable jury could find a particular fact. *See United States v. Giese*,

597 F.2d 1170, 1195–96 (9th Cir. 1979), *quoting United States v. Moore*, 522 F.2d 1068, 1075 (9th Cir. 1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976); Maguire and Epstein, *Preliminary Questions of Fact in Determining the Admissibility of Evidence*, 40 Harv.L.Rev. 392, 415–20 (1927); Saltzburg, *Standards of Proof and Preliminary Questions of Fact*, 27 Stan. L.Rev. 271, 272 n. 3 (1975). In this case, the precise question to be asked is whether a jury could find the fact in the government's favor by a preponderance of the evidence. *See Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *see generally* Saltzburg, *supra.* Thus the district court's application of the ordinary standard governing preliminary questions cannot be sustained in this case.

■ Nevertheless we find the court's second ground for excluding the tape, that its potential for prejudice substantially outweighed any probative value, an adequate one. Such a decision rests primarily within the sound discretion of the district court, *see* J. Weinstein & M. Berger, 1 Weinstein's *Evidence* § 403[02] at 403–14, 15, and we find no abuse of discretion here. First, we think the overall context of the tape could legitimately be found prejudicial by virtue of its tendency to suggest a kind of "guilt by association". The court might reasonably have concluded that a jury would ascribe undue influence to the mere fact that a defendant had a casual conversation with an admitted criminal, leading to a conviction based on a generalized assessment of character. This possibility might be thought particularly acute where, as here, the conversation includes obscenities, ethnic slurs, and otherwise coarse language, warped and suffused with an aura of nonspecific criminality because of the very medium of a governmentally planned clandestine overhearing.

In addition, the substance of the transcript might reasonably be thought likely to suggest misleading inferences. Our reading reveals repeated if awkward efforts by the informer to elicit incriminating statements, with a rather remarkable lack of success. Nevertheless the entire taped conversation was redolent of seamy business. Each of the three passages pointed to as adoptive admissions consisted of a rather elaborate inquiry or statement by the informer containing several assertions obliquely suggesting defendant's criminal involvement followed by some pause or denial or response by way of a comment on a different subject. This ambiguity sharply limits the probative force of the tape, and thus is an important factor in assessing the probativeness half of the relevant balance. Even, however, if any such exchange is properly characterized as an admission by reason of non-denial by defendant, we think that the district court was within the proper range of its discretion in considering that given the totality of circumstances (i. e., the lengthy sequence of unedifying, entrapment-oriented, largely opaque colloquy), the prejudicial impact of the tape substantially outweighed any probative value.

Because the two grounds for the district court's decision, were phrased in the alternative, we can sustain its holding if we conclude that the tape was properly excluded on either ground. We have concluded that the court's finding of undue prejudice can be upheld and the court's order is accordingly affirmed.