Richard J. LAKIN and Brenda Lakin,
Plaintiffs, Appellees,

v.

DANIEL MARR & SON CO.,
Defendant, Appellant.

No. 83–1498.

United States Court of Appeals,
First Circuit.

Argued Jan. 6, 1984.

Decided April 12, 1984.

Rehearing Denied May 9, 1984.

William J. Donovan, with whom Sheehan, Phinney, Bass & Green Prof. Ass'n, Manchester, N.H., was on brief, for defendant, appellant.

Ernest T. Smith, III, with whom Upton, Sanders & Smith, Concord, N.H., was on brief, for plaintiffs, appellees.

Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and PETTINE,* Senior District Judge.

BREYER, Circuit Judge.

On August 20, 1979, Richard Lakin was working helping to build a nuclear power plant in Seabrook, New Hampshire. He was injured around 2:00 p.m. by a wood plank approximately ten inches wide, two inches thick, and several feet long that fell and struck the top of his hard hat. He claimed that at the time it hit him a workman for Daniel Marr & Son Co. was working roughly fifty-four feet above him tossing planks of similar size near an uncovered two-and-a-half-inch wide crack in the platform. A jury found Marr liable and awarded Richard Lakin $230,000 for his injury and his wife, Brenda Lakin, $74,250 for loss of consortium. Marr appeals on several grounds.

1. Marr claims that the damage awards were excessive. Richard Lakin's injury, it argues, was nothing more than "classic whiplash" and his claimed pain and disability were unsupported by objective symptoms. Marr points out that Lakin did not receive emergency room treatment in the days after the accident, took three days

* Of the District of Rhode Island, sitting by designation.

before seeing a physician, saw several specialists over the next year who believed that he was essentially without injury and would soon be able to return to work, and was perhaps able to use a rototiller in the garden and "putter" around the house. In addition, Marr points out that Lakin himself admitted at trial that he could move his head and neck nearly normally, that his pain had significantly decreased, and that he can now pitch hay, operate some farm equipment, and cut wood.

Marr also challenges the reasonableness of Lakin's wife's award. It claims that no reported New Hampshire cases—many of which arguably concern greater loss and inconvenience to the spouse—have awarded even one-third as much for loss of consortium. It also notes that the Lakins did not offer any evidence that their sexual relations or Brenda Lakin's career had suffered as a result of the accident. Brenda Lakin is, in fact, now holding a job as a nurse—a long-sought goal of hers.

 In a diversity action, we measure the excessiveness of a jury award not, as Marr argues, according to the state's standard of review, but according to that ordinarily applied in the federal courts. *LaForest v. Autoridad de Las Fuentes Fluviales de Puerto Rico,* 536 F.2d 443, 447 (1st Cir.1976). We must, after considering all the evidence and the inferences therefrom in the light most favorable to plaintiff, *Stathos v. Bowden,* 728 F.2d 15 at 17 (1st Cir.1984); *Bayamon Thom McAn, Inc. v. Miranda,* 409 F.2d 968, 969 (1st Cir.1969), let the award stand unless it "shock[s] the conscience of the court." *Stathos v. Bowden,* 728 F.2d at 21; *Clark v. Taylor,* 710 F.2d 4, 13 (1st Cir.1983); *Kolb v. Goldring, Inc.,* 694 F.2d 869, 871 (1st Cir.1982).

 This award does not shock us. On the basis of the evidence presented, the jury could have reasonably concluded (i) that Lakin suffered extreme pain from the time of the accident at least until the time he was prescribed an electrical appliance to mask his pain, a period of nearly a year-and-a-half; (ii) that his injury had so debilitated him that he could not obtain a job;

(iii) that the injury had limited his ability to drive and to do many common farm and home chores; and (iv) that his pain and inability to work caused him to become severely depressed. In addition, a doctor who examined Lakin in January 1983 testified that he then suffered from "chronic strain of the neck and lower back" and that the range of motion in his head and neck was restricted by approximately 25 percent. The accident, he thought, caused both problems. The doctor believed that these problems would prevent Lakin from doing anything requiring repeated twisting and lifting movements or prolonged sitting or standing. He also believed that the disability was permanent. Furthermore, although Lakin did testify that he did some work around the farm, he testified that his activities were minimal. His cutting wood, for example, consisted of "pushing on the saw for a few minutes" when his family needed wood. This testimony does not necessarily show a lack of serious injury.

An economic expert testified that, if Lakin were completely unable to work, he would have lost past wages and fringe benefits worth $144,000 at present value and he could expect to lose future wages and benefits, the present value of which was approximately $726,000. The $230,000 award may represent a small portion of these sums along with compensation for pain, suffering, and medical expenses. It is "within the universe of possible awards that are supported by the evidence." *Stathos v. Bowden,* 728 F.2d at 21 (quoting *Clark v. Taylor,* 710 F.2d at 14).

 Lakin's wife presented evidence of injury to "unquantifiable aspects of the marital relationship [such] as love, companionship, affection, society, ... services, and solace." *Seaman v. Berry,* 114 N.H. 474, 477, 322 A.2d 922, 923 (1974) (quoting *LaBonte v. National Gypsum Co.,* 113 N.H. 678, 682, 313 A.2d 403, 406 (1973)). At trial, she testified that after the accident Lakin "became very withdrawn, very angry, [and] depressed" in a way that "completely changed" their lives. The family, she stated, "was really disintegrating," for

as Lakin became increasingly withdrawn, he would become very angry and yell at both his wife and children. In addition, his wife had to assume many of his responsibilities around the farm and house. Construing the evidence most favorably to plaintiff, the jury's award to Brenda Lakin does not "shock the conscience of the court."

2. Marr argues that the district court should not have admitted the report of the economic expert. The economist testified about Lakin's loss of past and future earnings and fringe benefits. To enable the jury to follow the expert's discussion and calculations, the court allowed Lakin to give summaries of the expert's testimony to each of the jurors. Marr objected on the ground that "[n]one of the reports of experts are customarily marked." Marr now claims that the report, though possibly relevant, was "cumulative and prejudicial." *See* Fed.R.Evid. 403. As evidence of its prejudicial effect, it points to the fact that during its deliberations the jury asked the court whether it had to grant damages in the exact amount suggested by the report.

■ We find no reversible error. When it decided to admit the report and give each juror a copy, the court carefully considered the dangers it might pose. It found, however, that the aid the report would give the jurors in understanding the expert's testimony outweighed these dangers. That conclusion was not unreasonable. *See Staniewicz v. Beecham, Inc.,* 687 F.2d 526, 530 (1st Cir.1982); *United States v. Barletta,* 652 F.2d 218, 220 (1st Cir.1981). Immediately after admitting the exhibit, moreover, the court cautioned the jury that "[t]he idea that the Court has allowed you to have a copy of the economic loss does not mean that it obviates or precludes the plaintiff from having the burden of proving his loss . . . ." Finally, after the jury asked the court whether it *had* to give the amount determined in the report, the court answered:

[Y]ou're like umpires in a baseball game . . . . You got to consider all the evidence and find out whether or not he's entitled to this award . . . [I]t's up to

you to decide the exact amount. . . . It's for you to decide on all the evidence. . . . [I]t's your perogative and you are the bosses. You decide on that.

The district court could hardly have instructed the jury more clearly.

3. Marr claims that the court erred in admitting a list of medical bills. It argues that the list included some which Lakin did not have to pay himself and for which he would not have to reimburse the insurance carrier. Our review of the record, however, reveals that Marr did not properly object to sending the list to the jury. On the contrary, when Marr's counsel raised this concern at trial, he proposed that the court "handle the exhibits with a corrective instruction." Later Lakin's counsel agreed to eliminate any double charges and asked what he should reduce the total by. Marr's counsel never replied, nor did he propose a corrective instruction. And when the trial court told the jury "[i]f you have found liability, . . . it's agreed that the [original] amount [of medical expenses] . . . should be awarded to the plaintiff," Marr did not object. Marr has failed to preserve any error here for appeal. *See* Fed.R.Civ.P. 51; Fed.R.Evid. 103(a)(1).

4. Marr argues that the district court erred in polling the jury before it finished deliberating. After the jury retired, it sent three questions on damages to the court. Before the judge answered them, however, he asked the foreman whether the jury had "all found there is or is not liability in this case?" The foreman answered "yes;" the judge then asked "[d]id you find liability?"; the foreman again answered "yes;" and the judge then polled the jury to make sure. Only then did he answer its three questions.

■ Marr objected and now asks for a new trial because the polling might have coerced the jury. It relies on three cases: *Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926); *Chicago, R.I. & P.R.R. v. Hugh Breeding, Inc.,* 247 F.2d 217 (10th Cir.), *cert. dismissed,* 355 U.S. 880, 78 S.Ct. 138, 2 L.Ed.2d 107 (1957), and *Berger v. United States,* 62 F.2d 438

(10th Cir.1932). In each of these cases, the court ordered a new trial because the trial court had asked the jury, which it knew to be divided, questions requiring the jury "to reveal the nature or extent of its division." *Brasfield v. United States,* 272 U.S. at 450, 47 S.Ct. at 135. These courts feared that such questioning might coerce the jury in reaching its decision. *Id.* In the present case, however, the polling did not reveal the extent and nature of any division because the jury was unanimous. The polling, moreover, could not have coerced the jury, because it had already reached a decision on liability. Apparently, its object was simply to make certain that the jury had in fact decided the liability issue before going on to the question of damages.

Marr argues that the issues of damages and liability intertwined and that the jury might have changed its mind on liability when it later deliberated on damages. It appears to us, however, that the two issues were distinct, involving different evidence. Regardless, we see no practical possibility of prejudice to Marr. Indeed, the district court might have tried the liability and damages issues separately. Fed.R.Civ.P. 42(b). Thus, we find no reversible error.

5. Marr claims that there is not enough evidence to show that Marr's acts proximately caused Lakin's injury. It therefore seeks reversal of the trial court's denial of a directed verdict and judgment notwithstanding the verdict or, alternatively, a new trial. Marr points out (i) that John White, the employee who Lakin claims was handling the plank, stated that he handled the planks before noon, whereas Lakin claims that he was hit around 2:00 p.m.; (ii) that Lakin offered no evidence that John White did not follow safety precautions; (iii) that there is no evidence that the particular plank that struck Lakin had been handled by White or other Marr employees; (iv) that employees of other subcontractors were working in the area from which the plank supposedly fell at the same time that White was working there; and (v) that the planks being removed were four to five feet long, whereas the size mentioned in Lakin's complaint is eight feet.

Lakin, however, introduced other evidence tending to show that Marr's acts proximately caused his injury. In particular, he (i) introduced interrogatories answered by Marr which stated that John White was moving planks between 1:00 p.m. and 3:00 p.m.; (ii) introduced a statement by John White in which he said that he had "no doubt ... that [Lakin] was hit by a plank that was being stripped at the time" White was moving them; and (iii) showed that John White "tossed" the planks towards the crack, which he knew was uncovered. This evidence (as Marr largely conceded at trial) was properly admitted. It disposes of Marr's first four points. The obvious difficulty of Lakin correctly estimating the size of the plank after it stunned him plausibly accounts for the discrepancy in point (v). The evidence of causality was sufficient to allow reasonable jurors to find liability. *deMars v. Equitable Life Assurance Society of the United States,* 610 F.2d 55, 57 (1st Cir.1979) (standard for denying directed verdict and judgment notwithstanding verdict). The jury's verdict also was not "so clearly against the weight of the evidence as to constitute a manifest miscarriage of justice." *Valm v. Hercules Fish Products, Inc.,* 701 F.2d 235, 237 (1st Cir.1983) (standard for new trial) (quoting *Hubbard v. Faros Fisheries, Inc.,* 626 F.2d 196, 200 (1st Cir.1980)); *Robinson v. Watts Detective Agency, Inc.,* 685 F.2d 729, 740 (1st Cir.1982) (same), *cert. denied,* 459 U.S. 1105, 1204, 103 S.Ct. 728, 1191, 74 L.Ed.2d 953, 75 L.Ed.2d 436 (1983).

6. Marr contends that the district court erred in not instructing the jury on "pure accident." This instruction, available in New Hampshire, tells the jury that it cannot conclude from the mere fact that an accident occurred that a party acted negligently. It is to be used primarily when special circumstances, like snow, ice, and rain, make an accident possible despite the use of due care. *E.g., Dupont v. Sullivan,* 104 N.H. 36, 177 A.2d 389 (1962); *Burns v. Cote,* 86 N.H. 167, 164 A. 771 (1933). In the present case, Marr claims

that a two-inch plank falling through a two-and-a-half-inch crack is a sufficiently freakish event to have required the judge to give this special instruction. We disagree. Whether the circumstances call for this type of instruction is (under New Hampshire law) primarily a matter for the trial court. *Dupont v. Sullivan*, 104 N.H. at 38, 177 A.2d at 391. The New Hampshire Supreme Court has cautioned that "[i]n the interest of avoiding confusion in the minds of the jury, it is believed that an instruction on pure accident should be given a restrictive application ...." *LaDuke v. Lord*, 97 N.H. 122, 124, 83 A.2d 138, 139 (1951); *see Perks v. Shor*, 110 N.H. 273, 274, 266 A.2d 127, 128 (1970). In this instance, there is adequate evidence that the accident, while unlikely, was foreseeable, and that although John White knew the crack was uncovered, he tossed the planks toward it without looking. Under these circumstances, the district court might reasonably have refused to grant the "pure accident" instruction.

7. Marr points to one peripheral decision of the district court that, in our view, constituted error. The economic expert, calculating Lakin's lost wages and benefits from the time of the accident until the time of trial, added 8.8 percent interest. Marr's counsel stated that this interest amounted to approximately $20,000. He argued that some of this interest represented "double counting," for New Hampshire law allows interest (of 10 percent) on a verdict from the time the complaint is filed. N.H.Stat. 336:1; 524:1–b. He asked the court to exclude from the evidence the 8.8 percent interest figure from the time the complaint was filed until the time of trial. (This is less than $20,000 because the complaint was filed several months after the accident took place.) From the exhibit, we calculate the amount as $18,900. The court refused to exclude this figure.

■ We agree with Marr about the "double counting." Lakin, citing legislative history of the New Hampshire interest statute, argues that the purpose of the statute was to reduce delay in settlements,

perhaps by increasing pressure on insurance companies to settle. We have expressly held, however, that one of the statute's purposes is "to provide compensation for the loss of the use of money damages during the pendency of the lawsuit." *Shepard v. General Motors Corp.*, 423 F.2d 406, 408 (1st Cir.1970). Since purposes such as "reducing settlement delay" and increasing the 'incentive to settle' are consistent with "providing compensation for loss of the use of money" (at least if statutory interest rates are realistic), the legislative history does not lead us to change our previous view. Thus, the expert's "interest" figure allowed the jury to award, as part of damages, the very interest that the New Hampshire statute would, in any event, provide.

Moreover, given the specificity of the expert's figure, its presence in a written report, and the likelihood that the jury would award damages for past lost wages and benefits, we believe the figure most likely influenced the jury. Therefore, to the extent it represented "double counting" it should have been excluded. As in *Kolb v. Goldring, Inc.*, 694 F.2d at 875, the error can be corrected through mechanical adjustment without interfering with the function of the jury. Thus, we order a new trial on the issue of Lakin's damages unless he consents to a remittitur of $18,900. *Kolb v. Goldring, Inc., supra*.

*So ordered.*

## ORDER OF COURT

## ON PETITION FOR REHEARING

Petitioners argue that the remittitur we ordered exceeds the amount of interest that the exhibit added to the economic losses incurred from the date of the complaint to the date of trial. In a sense, this is correct, but it misunderstands our opinion. The exhibit, for example, calculates the pre-complaint lost earnings from August 20, 1979 to November 30, 1979 at $6,664. The exhibit adds interest of $2,674. This added interest (amounting to 40 percent of

the loss) must consist of two parts: (a) interest for the several month period up to the filing of the complaint on August 26, 1980 and (b) interest for the several year period from the filing of the complaint until the estimated time of trial on June 1, 1983. The petitioners are entitled to recover the first part, but not the second, for New Hampshire's "pre-judgment interest" statute automatically adds that amount of interest (on the pre-complaint loss) to the award. Our calculations were designed to reflect this reading of the exhibit. Nothing petitioners say convinces us that our calculation was incorrect.

The petition for rehearing is denied.