Cheshire,
No. 5826.

## HARVEY C. HAYES, JR. *v.* STATE.

Argued December 3, 1968.
Decided April 30, 1969.

*James S. Davis* and *Faulkner, Plaut, Hanna & Zimmerman* and *Stillman D. Rogers* (*Mr. Rogers* and *Mr. N. Michael Plaut* orally), for the plaintiff.

*George S. Pappagianis,* Attorney General and *Robert W. Ritchie,* Assistant Attorney General (*Mr. Ritchie* orally), for the State of New Hampshire.

GRIFFITH, J. This is an action for determination by a jury of the damages to the plaintiff resulting from an eminent domain land taking by the State of New Hampshire under RSA 233:17. Trial by jury resulted in a verdict for the plaintiff in the amount of $1,200.

Plaintiff moved to set aside the verdict urging among other grounds that evidence was admitted over the objection of the plaintiff in violation of the pre-trial order. Plaintiff further moved that he be allowed as taxable costs the expert witness fees incurred in the trial by the plaintiff.

The Court granted the motion to set aside the verdict and

denied the expert fees requested. Exceptions of plaintiff and defendant were reserved and transferred by the Trial Court (*Loughlin*, J.).

The pre-trial order in the case contained the following agreement: "12. It is agreed that if either the State or the petitioner intend to introduce comparables they will submit them to each other on or before February 12, 1968." The defendant did not furnish the plaintiff with any list of comparable sales either before the date named or at the trial.

The defendant's expert testified that he used the market approach in arriving at his opinion of the damage resulting from the land taking. He testified that he considered forty sales and relied upon three as comparables in arriving at his opinion. Plaintiff objected to the testimony that the expert had relied upon comparables as a violation of the pre-trial agreement. Plaintiff's exception was saved to the Trial Court's allowing the opinion of the State's expert to stand.

In granting the motion to set aside the verdict the Trial Court did so with the following language: "Motion to set aside verdict granted on grounds set forth in paragraph 1c., specifically, in that it violated the agreement in the pre-trial order and the Court finds that in manifest justice to the petitioner the verdict should be set aside."

During the colloquy between counsel and the Court following the initial testimony of the State's expert there was substantial disagreement between counsel for the State and the plaintiff's counsel as to what was meant by the pre-trial agreement. Plaintiff's counsel indicated that for an expert to testify that he used comparables in arriving at his opinion constituted introduction of comparable sales into evidence. State's counsel argued that they had not introduced and did not intend to introduce evidence of actual comparable sales and that their expert's testimony was not in violation of the pre-trial order.

The Court recognized as the basis of plaintiff's objection that lack of advanced knowledge of the comparables relied upon by the expert increased the difficulty of cross-examination. In view of this the Court first offered to take a recess to permit preparation and finally offered plaintiff's counsel a continuance. Both suggestions were rejected by the plaintiff's counsel who relied upon his exception to the testimony of the expert.

The Trial Court was faced with the dilemma of permitting the

testimony at the risk of injustice to the plaintiff or excluding the testimony of the State's expert. The latter course would have left the State with no evidence on the only issue in the case and so the Court reluctantly admitted the evidence. That the Trial Court felt at that time that its ruling might prejudice the plaintiff is indicated by its characterization of the State's position: "I don't think it's very fair, and that's on the record too."

It is of no aid to counsel for the State that they were not required to enter into an agreement for exchange of comparable sales if in fact they did so. Agreements between counsel are scrupulously kept in this state and are of "inestimable value in the administration of justice." *Johnson* v. *Company*, 96 N. H. 44, 49; *Burtman* v. *Butman*, 94 N. H. 412. In this case we think the pre-trial agreement need not have been given the broad interpretation accorded it by the Trial Court. There is support for construing the word "introduce" as contemplating actual introduction into evidence of sale prices of comparable sales and not the reliance by an expert on such sales. States which have followed the so-called minority rule excluding evidence of comparable sales have permitted an expert's opinion to be based upon knowledge of other sales. 1 Orgel on Valuation under Eminent Domain (2d *ed.*) *p.* 582; 1 Jones, Evidence (5th *ed.*) *s.* 197.

The issue presented by the order setting aside the verdict involves more than the interpretation of the pre-trial agreement. The language of the agreement is not without ambiguity and we cannot say that reasonable men might not interpret it under the conditions of this case as did the Trial Court. The Trial Court was called upon to apply the pre-trial order it had made to circumstances which arose at the trial. The ruling admitting the evidence was accompanied by a finding that counsel for the plaintiff was unfairly surprised by the evidence. The ruling setting aside the verdict carries an implicit finding that admission of the testimony resulted in manifest injustice. These are findings of fact which we may not ignore by relying solely upon interpretation of the pre-trial agreement in disregard of the circumstances under which it was invoked.

"It is a feature of a jury trial for the trial judge not only to see that the trial is fairly conducted but also to correct or vacate what turns out to be an unfair result." *Wisutskie* v. *Malouin*, 88 N. H. 242, 245. If the Trial Judge's duty to set aside verdicts where he finds the result was unjust is to be

meaningful his discretion must be broad. Nuances contributing to the result are not always apparent in the record or in the findings. The order setting aside the verdict in this case and ordering a new trial was within the discretion of the Trial Court. *Eichel* v. *Payeur*, 107 N. H. 194, 196; *Wisutskie* v. *Malouin, supra.* See *Perreault* v. *Lyons*, 99 N. H. 169.

The plaintiff excepted to the denial of his motion that he be awarded as taxable costs the expert witness fees of the two experts who were called by the plaintiff. The motion was denied as a matter of law on the sole basis that statutory costs cannot be recovered against the State without its consent, express or implied.

Since the question may arise on a retrial of this case we do not treat the question as moot. Both parties agree that the plaintiff may not recover costs from the State unless the statute specifically directs. *D'Amours* v. *Hills*, 96 N. H. 498.

RSA 233:17 authorizes the court to award costs against the State in this action. Costs are not defined in this chapter but are described in detail in RSA ch. 525. RSA 525:14-a (supp) was enacted in 1967 and expanded recoverable costs in civil cases including costs for expert fees on motion and order of the court.

The costs allowable under RSA 233:17 are defined by RSA ch. 525. It follows that the amendments of RSA ch. 525 operated to enlarge the costs allowable against the State under RSA 233:17 so to include expert witness fees "on motion and order of the court." RSA 525:14-a (supp).

State's exception overruled. Plaintiff's exception sustained.

*Remanded.*

All concurred.