Rockingham
No. 7069

### State of New Hampshire

v.

### Barry J. Wilson and Rosalie C. Wilson

February 28, 1975

*Warren B. Rudman,* attorney general, and *Michael P. Bentley,* assistant attorney general (*Mr. Bentley* orally), for the State.

*Shaines, Madrigan & McEachern* and *Sanford Roberts (Mr. Paul M. McEachern* orally) for the defendants.

KENISON, C.J.   This dispute stems from an appeal by defendants from an award of damages by the New Hampshire Commission of Eminent Domain pursuant to RSA 498-A:27 (Supp. 1973). Trial by jury in the Rockingham County Superior Court resulted in a verdict for defendants (*Dunfey,* J.). Relying on the provisions of RSA 525:14-a, defendants filed their taxation of costs (RSA 525:20) totalling $1167 which included $400 for an appraisal; $680 for pretrial conference work, updating the initial appraisal report and court appearance by an expert witness; $52 for transcribing portions of testimony before the eminent domain commission; and $35 for printing the reserved case.

The State appealed to the superior court from the clerk's decision to allow in full defendants' taxation of costs. RSA 525:14-a; RSA 491:App. R. 83 (Supp. 1973). At a hearing before the court defendants waived their claims for the $400 appraisal fee and for the $35 printing fee. The State excepted to the court's order that "[e]xpert witness fees [be] allowed in the sum of $680 together with transcript costs in the sum of $52 in accordance with the provisions of RSA 525:14-a."

The questions in this case are whether the prevailing party in an eminent domain proceeding may recover the costs for an expert witness in preparation for trial and for a transcript of testimony under the provisions of RSA 525:14-a.

I. Fees of Expert Witnesses in Preparation for Trial

Absent statute the prevailing party in civil litigation in this country must pay the fees of his own expert witness. Note, 58 Cornell L. Rev. 1222 (1973); 8 J. Wigmore, Evidence, § 2203, at 142 (1961). There is no doubt that in this State, a defendant who prevails in an eminent domain action may recover expert witness fees against the State. RSA 233:17; *Hayes v. State,* 109 N.H. 353, 356, 252 A.2d 431, 434 (1969). RSA 525:14-a (Costs: Witnesses) provides in part that "[t]here shall be allowed in bills of cost taxed in the superior court: For expert witness fees, actual costs shall be allowed by the clerk of the superior court as set forth in an affidavit of counsel unless the opposing party requests a hearing regarding expert witness fees within ten days after the filing thereof in which case the court, after hearing, shall determine the amount of expert witness fees to be allowed." What fees are to be permitted is in the discretion of the trial court. *Vezina v. Amoskeag Realty Co.,* 110 N.H. 66, 69, 260 A.2d 115, 117-18 (1969); *Medico v. Almsay,* 108 N.H. 324, 234 A.2d 527, 528 (1967); *McLaughlin v. Union-Leader,* 100 N.H. 367, 127 A.2d 269, 273 (1956); *cf.* J. Moore, Federal Practice, § 54.71, at 1376 (1974).

The State's position is that expert witness fees taxable to the losing party under RSA 525:14-a are restricted to "court work" (*i.e.,* time incidental to appearing and testifying in court), not including trial preparation such as pretrial conferences or updating reports prepared before trial. Defendants contend that the provision in RSA 525:14-a for "actual costs" is not so limited but may include trial preparation at the discretion of the trial court.

While the trial court's determination of the extent of recovery for expert witness fees in an award of costs is discretionary, the history in this State of paying witnesses in general and experts in particular provides definite parameters to the permissible scope of that discretion. *See Medico v. Almsay,* 108 N.H. 324, 325, 234 A.2d 527, 528 (1967). The need for compensation was recognized at an early date in this State as well as in England. Laws of 1792, ch. 47; 5 Eliz. I, ch. 9, § 12 (1562). Although in England the extent of compensation was measured by a "reasonable sum of money for his [the witness's] costs and charges . . . ." (*Id.*), the prevailing practice in this country has been to prescribe specific rates

by statute. *See* RSA 525:14-a; 8 J. Wigmore, Evidence, § 2202, at 136 (1961); *Gunnison v. Gunnison,* 41 N.H. 121, 128 (1860). The statutory tradition has been uniform in limiting compensation to travel and appearances in court. 8 J. Wigmore, Evidence *supra; see Kirke v. County,* 76 N.H. 181, 183, 80 A. 1046, 1047 (1911); *Bliss v. Brainard,* 42 N.H. 255, 256 (1860).

Prior to 1967 both expert and regular witnesses were compensated at the same nominal rate in this State. Abbey, *Taxation of Costs in New Hampshire,* 5 N.H.B.J. 114, 121 (1963). In 1967 the original version of RSA 525:14-a was enacted, providing that no expert witness fees would be allowed as part of the taxation of costs except upon "motion and order of the court." Laws 1967, 404:3. The apparent purpose of this statute was to "permit the successful litigant to recover as costs the reasonable charges made by expert witnesses in lieu of the former nominal fees allowed." *Vezina v. Amoskeag Realty Co.,* 110 N.H. 66, 69, 260 A.2d 115, 118 (1969). Upon recommendation of the judicial council, RSA 525:14-a was amended to its present form in order to permit the clerk of the court in the first instance to tax expert witness fees in the amount of "actual costs". N.H. Judicial Council, Thirteenth Biennial Report 60 (1970); *see* N.H.S. Jour. 740-41 (1969).

But the term "actual costs" was not meant to include all fees paid an expert witness. Nor have we so interpreted the statute. *Manchester Housing Auth. v. Belcourt,* 111 N.H. 367, 370, 285 A.2d 364, 366 (1971); *Vezina v. Amoskeag Realty Co.,* 110 N.H. 66, 69, 260 A.2d 115, 117-18 (1969). In *Manchester Housing Authority* this court specifically held that an appraisal fee is not recoverable as a taxable cost under RSA 525:14-a. *Id.* A fortiori, defendants in this action may not recover that portion of the $680 allowed by the superior court allocable to updating the initial appraisal report.

We agree with the State that "reasonable charges" (*Vezina v. Amoskeag Realty Co. supra*) for an expert witness are limited to charges made incidental to appearing and testifying before judicial or administrative bodies. Accordingly, we hold that defendants may not recover that part of the $680 awarded by the trial court attributable to pretrial conference work by the expert.

While it may seem anomalous not to allow recovery of costs for the pretrial preparation made by experts, that result is dictated by the conservative history of compensating witnesses in this State. *Tau Chapter v. Durham,* 112 N.H. 233, 236-37, 293 A.2d 592,

593-94 (1972). Inherent in the distinction between treatment of expert and regular witnesses in RSA 525:14-a is the recognition that an expert's services are more costly. What makes them so is the obvious fact that the expert must be prepared at trial to render an opinion which a layman is incapable of giving. The allowance of relatively high remuneration for services rendered in testifying is deemed to be payment for preparing that testimony. *Stevenson v. Henning*, 268 A.2d 872, 874 (Del. 1970); *State Highway Dep't v. Lots Nos. 133, 134 & 135*, 238 A.2d 837, 838-39 (Del. 1968); *see* 4A Nichols, Eminent Domain, § 14.249, at 14-358 (J. Sackman ed. 1974).

## II. Transcript Costs

Part of the costs allowed by the superior court was $52 for transcribing a portion of the testimony before the eminent domain commission. RSA 525:14-a permits the actual cost of a transcript to be included in the bill of costs. Although the State maintains that the provision is applicable only where a transcript of lower court proceedings is made for submission to the supreme court as part of the reserved case, the language of the statute is not so narrowly worded nor does the State offer any authority to sustain its interpretation. Had defendants taken depositions to obtain the requisite testimony, the costs for so doing could have been allowed by the superior court. RSA 517:20. Under the specific language of RSA 525:14-a, it was within the discretion of the court to permit $52 for actual costs of transcripts. *Hayes v. State,* 109 N.H. 353, 356, 252 A.2d 431, 434 (1969); *D'Amours v. Hills,* 96 N.H. 498, 499, 79 A.2d 348, 349 (1951).

The case is remanded to the superior court for a determination of what portion of the $680 charge for expert witness fees is attributable to court-related work as we have defined that term in part I of this opinion.

*Remanded.*

All concurred.

Request of House of Representatives
No. 7144

OPINION OF THE JUSTICES

March 12, 1975

The following resolution was adopted by the house of representatives on February 25, 1975, and filed with the supreme court on February 26, 1975:

"Whereas there is presently pending before the House of Representatives CA-CR 2 relating to decreasing the age requirement for members of the senate, providing that the age requirement for members of the senate is decreased; and

"Whereas Resolution No. 21 of the 1974 Constitutional Convention relating to residency requirements for election to the office of state senator and governor's councilor, providing that the residency requirement be reduced from seven years to four years was adopted by said convention and will be presented to the voters at the biennial election in November, 1978; and

"Whereas Resolution No. 94 of the 1974 Constitutional Convention relating to the qualifications of senators, providing that if a senator moves from his district, he shall forfeit his seat in the senate was adopted by said convention and will be presented to the voters at the biennial election in November, 1976; and

"Whereas CA-CR 2 and Resolutions No. 21 and 94 amend Article 29 of Part Second of the Constitution of New Hampshire in different ways without regard to what the other resolution provides; and

"Whereas the House is uncertain as to the effect of its amendment to Article 29 of Part Second of the Constitution if such amendment is adopted by the people in March, 1976 and the people later adopt Resolution No. 94 in November, 1976, and Resolution No. 21 in November, 1978; and

"Whereas the General Court cannot amend Resolutions No. 21 and 94 to make said resolutions compatible with CA-CR 2; now therefore be it

"Resolved by the House of Representatives that the justices of the supreme court be respectfully requested to give their opinion upon the following questions:

"1. If the people adopt CA-CR 2 in March, 1976, and Resolution No. 94 of the 1974 Constitutional Convention is adopted by the people in November, 1976, and Resolution No. 21 is adopted by the people in November, 1978, how will Article 29 of Part Second of the Constitution of New Hampshire read?

"2. If the people adopt CA-CR 2 in March, 1976, and Resolution No. 94 of the 1974 Constitutional Convention is not adopted by the people in November, 1976, but Resolution No. 21 is adopted by the people in November, 1978, how will Article 29 of Part Second of the Constitution of New Hampshire read?

"3. If the people adopt CA-CR 2 in March, 1976 and Resolution No. 94 of the 1974 Constitutional Convention in November, 1976, but Resolution No. 21 is not adopted by the people in November, 1978, how will Article 29 of Part Second of the Constitution of New Hampshire read?"

The following answers were returned:

*To the House of Representatives:*

The undersigned justices of the supreme court return the following reply to the inquiries contained in your resolution adopted February 25, 1975, and filed with this court on February 26, 1975.

CA-CR 2, now pending before the house of representatives, would propose an amendment to the New Hampshire constitution, part II, article 29, to be submitted to the voters in March 1976. The proposed amendment would lower from thirty to twenty-five the age below which "no person shall be capable of being elected a state senator" as provided by article 29.

As your resolution points out, the 1974 Constitutional Convention has proposed two different amendments of the same article

29, both of which would be submitted to the voters after the amendment proposed by CA-CR 2 has been acted upon by the voters. Resolution number 94, to be submitted to the voters in November 1976, would amend article 29 by adding thereto a provision that if a senator should cease to be an inhabitant of the district for which he was chosen, he should be disqualified and a vacancy in the position declared. The second amendment proposed by the convention, by resolution number 21 as finally adopted on June 26, 1974, would amend article 29 by reducing from seven to four years the required period that a senator must have been an inhabitant of the State. This provision would also be applicable to members of the council by virtue of New Hampshire constitution, part II, article 61. The proposal of resolution number 21 is to be submitted to the voters in November 1978.

The questions contained in your resolution appear to have been prompted by the form of the convention resolutions, each of which restates article 29 in the form which it will take if amended pursuant to those resolutions only, the statement in each case retaining the present "age of thirty years" requirement now found in article 29. Thus the crux of your inquiries, as we understand them, is directed to the question of what effect the forms of these resolutions adopted by the 1974 convention would have upon the language of article 29, in the event that the amendments proposed by the convention should be adopted by the voters following adoption of the amendment proposed by CA-CR 2. Obviously if CA-CR 2 is approved by the voters, the revised versions of article 29 contained in the convention resolutions will become inaccurate, since article 29 will then contain the language proposed by CA-CR 2.

We are of the opinion that this would not invalidate affirmative action by the voters either upon the question to be submitted pursuant to CA-CR 2, or upon those to be submitted pursuant to the two resolutions of the convention. The questions to be submitted to the voters pursuant to resolutions 94 and 21 of the convention call for no change in the requirement of article 29 of the constitution relating to the age of a senator. The only question to be submitted to the voters under resolution 94 will read as follows: "Are you in favor of amending the constitution to provide that should a senator cease to be an inhabitant of the district for which he was chosen, he shall be disqualified to hold such position and a vacancy shall be declared?" Jour. for June 4, 1974,

N.H. Const. Conv. (1974). The only question to be submitted pursuant to resolution 21 will read as follows: "Are you in favor of amending the constitution to reduce the residency requirement for the office of state senator and governor's councilor from seven to four years?" Jour. for June 26, 1974, N.H. Const. Conv. (1974). Thus in neither instance will the voters be called upon to take action with respect to the age requirement of article 29 which CA-CR 2 will previously have amended if adopted by the voters.

In our opinion therefore, affirmative action by the voters upon either or both of the questions to be submitted pursuant to the resolutions of the convention will not invalidate prior affirmative action by the voters under CA-CR 2; nor can action under those resolutions operate to restore to article 29 language previously altered by amendment of article 29 pursuant to CA-CR 2.

This is so because affirmative votes in response to the questions submitted to the voters pursuant to the convention resolutions will be effective only to amend article 29 in the respects stated in the questions voted upon, and not in other respects. "The result of what the voters did must be determined by 'the effect and meaning of the language' which they 'finally ratified and adopted'. *Pollard v. Gregg,* 77 N.H. 190, 194 . . . it does not seem to us wise to set a precedent which would give to a vote of the people a meaning not expressed nor reasonably to be implied from its terms, but resting upon an assumption of the voters' receipt and comprehension of information not appearing on the ballot." *Concrete Co. v. Rheaume Builders,* 101 N.H. 59, 61, 132 A.2d 133, 136 (1957). *See also Gerber v. King,* 107 N.H. 495, 499, 225 A.2d 620, 623 (1967). Any inaccuracies in the restatement of the language of article 29 contained in the resolutions of the convention which would result from prior adoption of the CA-CR 2 amendment would come to no more than clerical error resulting from changed conditions, and would not be dispositive of the action of the voters. Moreover reference to the convention journals would clearly show that resolutions 21 and 94 were not intended to alter the minimum age requirement of article 29.

Question 1 is answered as follows: "If all three proposed amendments are approved by the voters, article 29 will read as follows:

*"Provided nevertheless,* that no person shall be capable of being elected a senator, who is not of the age of twenty-five years, and who shall not have been an inhabitant of this state for four years immediately preceding his

election, and at the time thereof he shall be an inhabitant of the district for which he shall be chosen. Should such person, after election, cease to be an inhabitant of the district for which he was chosen, he shall be disqualified to hold said position and a vacancy shall be declared therein."

Question 2 is answered as follows: "If only the amendments proposed by CA-CR 2 and by constitutional convention resolution 21 are adopted, article 29 will read as follows:

*"Provided nevertheless,* that no person shall be capable of being elected a senator, who is not of the age of twenty-five years, and who shall not have been an inhabitant of this state for four years immediately preceding his election, and at the time thereof he shall be an inhabitant of the district for which he shall be chosen."

Question 3 is answered as follows: "If only the amendments proposed by CA-CR 2 and by constitutional convention resolution 94 are adopted, article 29 will read as follows:

*"Provided nevertheless,* that no person shall be capable of being elected a senator, who is not of the age of twenty-five years, and who shall not have been an inhabitant of this state for seven years immediately preceding his election, and at the time thereof he shall be an inhabitant of the district for which he shall be chosen. Should such person, after election, cease to be an inhabitant of the district for which he was chosen, he shall be disqualified to hold said position and a vacancy shall be declared therein."

FRANK R. KENISON
LAURENCE I. DUNCAN
EDWARD J. LAMPRON
WILLIAM A. GRIMES
ROBERT F. GRIFFITH

March 5, 1975. Representative Joseph M. Eaton, District No. 1, filed a memorandum.