CARROLL E. CUTTER

v.

TOWN OF FARMINGTON

July 26, 1985

*Nighswander, Martin, Kidder & Mitchell P.A.*, of Laconia (*David S. Osman & a.* on the brief, and *Linda G. Peck* orally), for the plaintiff.

*Cooper, Hall, Whittum & Shillaber P.C.*, of Rochester (*Donald F. Whittum* on the brief and orally), for the defendant.

KING, C.J. This case comes before us on appeal from a trial in the Superior Court (*Nadeau*, J.) in which the plaintiff, Carroll Cutter, brought suit for damages against two members of the police department of the town of Farmington and the town itself. A jury returned a verdict in favor of the plaintiff and the two police officers, and against the municipality, and awarded damages. The Town of Farmington (town) appeals, seeking review of the trial court's refusal to grant its motion for judgment notwithstanding the verdict and certain other post-trial motions. We affirm in part and reverse in part.

On the evening of August 30, 1980, a Farmington police cruiser followed a truck into the parking lot of Luneau's Restaurant on Route 11 in Rochester. The truck had been observed wandering across the centerline of the highway, and it had nearly collided with the police cruiser. The cruiser contained two Farmington police officers, John Burbine, a regular officer, and William Stawecki, a special officer hired approximately two weeks previously. Officer Burbine was supposed to give Officer Stawecki on-the-job training and supervision, but he had not previously worked with him. On this occasion Officer Stawecki was on his third or fourth night patrol. According to the record, Officer Stawecki had not received any formal instruction in police work prior to his assignment with Officer Burbine.

Once in the parking lot of Luneau's, the truck briefly stopped, then pulled into an available space near the east end of the lot. Although the testimony was in dispute, essentially the following took place. Officer Burbine approached the driver's side of the vehicle; Officer Stawecki the passenger's side. As the latter approached, Mr. Cutter got out of the truck. Officer Stawecki told him to put his hands against the truck. The plaintiff did not do this immediately, but instead insisted on knowing what he had done. At this point, Officer Stawecki testified that the plaintiff reached into his pocket with his right hand; that he, Officer Stawecki, grabbed plaintiff's hand with his own right; and that, thereupon, the plaintiff attempted to swing at him with his left. The plaintiff denied this and testified that Stawecki came running up to him, told him to put his hands on the truck and, in response to his query about what he had done, shoved him hard once or twice against the vehicle.

Officer Stawecki pushed Cutter to the ground, got on top of him and attempted to handcuff him. Officer Burbine, who had heard something hit the side of the truck, went over to investigate and found Officer Stawecki attempting to handcuff the plaintiff. He assisted him in the task. In the interval, Mr. Bickford, the other occupant of the truck, got out of the vehicle and came over to where

the fracas was occurring. Again, what Bickford's words were was in dispute, as well as the manner of their delivery. It was agreed, however, that he in no way attempted to join the fray. At this point back-up police from Rochester had arrived, and Officer Burbine indicated to them that they should arrest Bickford. Bickford claimed that he was unnecessarily roughed-up prior to himself being handcuffed. The Rochester police denied this allegation.

The two men, Cutter and Bickford, were taken to the Rochester police station where they were booked and placed in custody. There was additional testimony that Cutter had tried to escape from the police cruiser and that both he and Bickford were screaming and kicking; Cutter and Bickford denied both allegations.

Subsequent to their detention, the plaintiff and Mr. Bickford brought suit against the police officers and the Town of Farmington. They also sued the City of Rochester, but the plaintiff settled out of court. In the plaintiff's original complaint, he sought damages in the amount of $100,000. This amount increased to $600,000 before the case came to trial in the spring of 1984. At the close of trial, the jury returned a verdict in favor of the plaintiff Cutter and awarded him damages in the amount of $55,000. It found for the police officers and against the municipality. It found for the defendants as to Mr. Bickford.

The nub of the case that went to trial was that Officer Stawecki had improperly applied the handcuffs to the plaintiff's wrists by failing to double-lock them. As a result of the failure to double-lock the handcuffs, the handcuffs continued to tighten between the time of application in Luneau's parking lot and the time of their removal at the Rochester police station. The plaintiff claims that the pressure of the handcuff on his left wrist caused permanent damage to the radial nerve, resulting in a partial disability which unfitted him both for his present employment as a logger and for other physical labor. The plaintiff lacks any work experience outside of logging, and is illiterate. He further claims that he had requested Officer Stawecki to loosen the handcuff upon at least two occasions, but that his requests went unheeded.

The town urges this court to determine that the trial court erred in refusing to grant a judgment notwithstanding the verdict. A party is entitled to such a ruling "only when his case is established by the sole reasonable inference from undisputed facts." *Amabello v. Colonial Motors*, 117 N.H. 556, 561, 374 A.2d 1182, 1185 (1977) (quoting *Skivington v. Robinson*, 106 N.H. 493, 496, 213 A.2d 921, 923 (1965)). The court entertaining the motion is required to construe both the evidence and all reasonable inferences therefrom

most favorably to the party opposing it. *Id.; Dubreuil v. Dubreuil,* 107 N.H. 519, 520, 229 A.2d 338, 339 (1967). If the evidence adduced at trial is conflicting, or if several reasonable inferences may be drawn, the motion should be denied. *Amabello, supra* at 561, 391 A.2d at 1185. "It should be granted only when all of the evidence viewed most favorably to the opponent so overwhelmingly favors the moving party that *no contrary verdict based upon that evidence could ever stand." Id.* (Emphasis added.)

The town asserts that under both New Hampshire law and general tort law principles, a finding that the town's police officers, Stawecki and Burbine, were free of negligence and that the town itself was fully responsible for the plaintiff's injuries is an impossibility, and that the trial court should, therefore, have granted the motion for judgment notwithstanding the verdict.

The town's argument raises the issue whether there was any causal relation proved between actions of the municipality, in its status as employer and supervisor of the policemen, and the plaintiff's injuries. It is insisted that, since the jury found that the conduct of the defendant police officers "conformed to the standards required of police officers," any negligence on the town's part was not a proximate cause of Carroll Cutter's injuries. Thus, it is contended, a finding of negligence on the part of Officers Stawecki and Burbine was an indispensable predicate to a finding of actionable negligence on the part of the municipality.

█ The town's argument erroneously assumes that the doctrine of *respondeat superior* controls the entire case submitted to the jury. *See, e.g., McAndrew v. Mularchuk,* 33 N.J. 172, 162 A.2d 820 (1960). Count two of the plaintiff's writ alleges municipal negligence on the basis of *respondeat superior,* but count three alleges negligent hiring, training and supervision. The basis of a claim of negligent employment or supervision brought against an employer, where the employee harms a third party, is *not* vicarious liability, *La Lone v. Smith,* 39 Wash. 2d 167, 171, 234 P.2d 893, 896 (1951); *see Hollinger v. Jane C. Stormont Hospital,* 2 Kan. App. 2d 302, 311–12, 578 P.2d 1121, 1126–27 (1978); on the contrary, such a claim of negligent hiring, training and supervision can encompass direct liability as a result of the misconduct of the employee.

The principles involved in such a direct action are set forth in the Restatement (Second) of Agency § 213 (1958), to which this court has subscribed. *See Labonte v. National Gypsum Co.,* 113 N.H. 678, 681, 313 A.2d 403, 405 (1973). Section 213 states, in relevant part:

"A person conducting an activity through servants or

other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

> (a) in giving improper or ambiguous orders of [sic] in failing to make proper regulations; or
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others;
> (c) in the supervision of the activity; . . ."

Comment d (*agent dangerous*) states that if the dangerous quality of an agent causes harm, liability attaches to the principal under the rule that "one initiating conduct having an undue tendency to cause harm is liable therefor." *Id.* The "dangerous quality" may encompass the agent's "incompetence or unskillfulness due to . . . his lack of experience considered with reference to the act to be performed." Moreover, the Restatement takes care to point out that liability under this rule results not merely from the agent's incompetence or carelessness, but from the principal's lack of prudence "in selecting the person for the business in hand." *Id.*

■■ It seems clear to us that the rule is applicable in situations where the untutored agent unwittingly causes injury which was a risk of harm attendant to the employment which the principal had reason to foresee. This is particularly true in the case of the furnishing of dangerous instrumentalities to an agent or servant. The instrumentality—such as a gun or, in this case, handcuffs—may be dangerous to third persons because the servant to whom it has been given has no knowledge of its qualities. *Id.*, comment e. Therefore, the inquiry required under this rule is whether the policemen were incompetent, inexperienced or unskilled in a way that caused injury, the risk of which was within the scope of their employment and was known to the employer-municipality; the inquiry is *not* whether the harm occurred because of the policemen's inattention or negligence. *See* RESTATEMENT (SECOND) OF TORTS § 411 and comment b. Negligence is not synonymous with incompetence or inexperience. *See Watsontown Brick Co. v. Hercules Powder Co.*, 265 F. Supp. 268, 273 (M.D. Pa. 1967) (court denied defendant's motion for judgment n.o.v. where defendant company furnished plaintiff company with an inexperienced blaster; damage found to have ensued from the employee's lack of skill and not from any negligence on his part; and defendant-employer had duty to ascertain blaster's competence for the job he was about to undertake). Therefore, on these facts, we do not find the negligence of Officers Stawecki and Burbine a necessary legal prerequisite to a finding of negligence in hiring, training and supervision on the part of the town.

The evidence adduced at trial was uncontroverted that Officer

Stawecki had received both a set of handcuffs and a service revolver upon entering the Farmington police force prior to *any* training or supervision regarding either when or how to use these instrumentalities, instrumentalities which could maim if unskillfully employed. There was also evidence that Officer Burbine was untrained as a supervisor and that his incompetence contributed to the unfortunate turn of events.

The trial court charged the jury generally on the issues of duty, breach of duty and proximate causation. The court told the jury that they *might* apply the standard of care applicable to the "average prudent police officer," and it also told them that "police officers must be adequately and reasonably competent to handle those individuals with whom they come in contact and safely to detain, arrest and transport them." Finally, the court instructed the jury on the claims of the plaintiff that the town, through its police department, had hired Officer Stawecki and improperly supervised him through Officer Burbine, and that these allegedly inadequate hiring and training actions could result in liability on the part of the municipality.

■■ We believe that the charge, taken as a whole, was adequate to convey to the jury the plaintiff's theory of negligent hiring and supervision, as well as that of liability based on a theory of *respondeat superior*. The fact that the jury could have found liability based upon the first, but not the second, theory does not strike us as unreasonable in view of all of the evidence.

The town also contends that the trial court erred in denying its motion to limit the recovery of damages to $50,000 in accordance with RSA chapter 507-B (1975). The town claims that sometime after the close of trial its insurance carrier took the position that the policy at issue covered only the town's police department and not the Town of Farmington. As a consequence, both the defendant and the plaintiff brought declaratory judgment actions against the insurer.

At the time of this motion, the town was, for all intents and purposes, without any insurance coverage adequate to satisfy the plaintiff's judgment against it. So long as there was no coverage for the loss sustained, the statutory limit of $50,000 under RSA chapter 507-B (now $100,000, effective August, 1981) controlled, and precluded municipal liability in excess of that amount. The lower ceiling would apply, because the incident upon which this case was based occurred in 1980.

In *Estate of Cargill v. City of Rochester*, 119 N.H. 661, 669, 406 A.2d 704, 709 (1979), we held that a statutory limitation on the amount of recovery against a municipality in tort actions was consti-

tutional. Therefore, for an incident occurring prior to August, 1981, when the ceiling was raised by the legislature, the maximum allowable recovery against a municipality without any insurance, or with insurance coverage in amounts less than the statutory cap, was $50,000. We refuse to declare the $50,000 limitation on recoveries then decreed by statute to be unconstitutional.

It may be that the declaratory judgment litigation now pending will result in a finding of coverage for the municipality's liability, in which case the plaintiff may recover the full measure of his damages. Nevertheless, until such time as there is a determination of coverage, it must be assumed that there is no insurance covering the town's liability.

■ Therefore, since the $50,000 limit of RSA chapter 507-B (1975) is controlling in the absence of any then available insurance coverage, the trial court erred in denying the motion to limit the damages.

■ ■ The town also claims that the trial court erred in allowing all but $3,000 of the plaintiff's bill of costs totaling over $12,000. The award of costs lies within the sound discretion of the trial court, *Amabello v. Colonial Motors*, 120 N.H. 524, 525–26, 418 A.2d 1279, 1281 (1980), although certain costs generally are awarded to the prevailing party under RSA chapter 525. Nevertheless, the proper exercise of such discretion is not limitless. *Medico v. Almasy*, 108 N.H. 324, 325, 234 A.2d 527, 528 (1967) (prevailing party's entitlement to costs is *prima facie* only and not absolute).

It is not the function of this court to scrutinize on appeal every prevailing party's laundry list of costs at the behest of the losing party, and we do not intend to do so, mindful as we are that such decisions are best left to the discretion of the trial court. However, this court has had occasion to construe the language of the costs statute.

■ ■ The town objects to the amount of expert fees charged in the case at bar, in one instance exceeding $2,500, and cites our language in *State v. Wilson*, 115 N.H. 99, 333 A.2d 459 (1975), as controlling. In *Wilson* we held that "actual costs," as used in the costs statute, RSA 525:14-a, was not meant to include all fees paid to an expert witness. *Id.* at 102, 333 A.2d at 462; *Vezina v. Amoskeag Realty Co.*, 110 N.H. 66, 69, 260 A.2d 115, 117–18 (1969). Those "reasonable charges" of experts which properly lie within the discretion of the trial court are limited to those "incidental to *appearing* and *testifying* before judicial or administrative bodies," *State v. Wilson, supra* at 102, 333 A.2d at 462 (emphasis added). Other

expenses, therefore, like those for pretrial conference work, should not necessarily be allowed. *Id.*

■ The town further objects to the allowance of *Lexis* research fees as costs. We agree that these costs should not have been allowed.

We therefore remand the case to the trial court for a redetermination of allowable costs consistent with this opinion. Our directions for the remand cannot be more specific, because the trial court did not specify those items which comprised the sum of the $3,000 which was disallowed. If, indeed, any part of the expert fees or the *Lexis* fees was included in that amount, the trial court should so indicate.

The ruling of the trial court on the motion for judgment notwithstanding the verdict is affirmed; the ruling on the motion to limit damages is reversed; and the award of costs is remanded for further consideration and clarification.

> *Affirmed in part; reversed in part; remanded.*

All concurred.