Johnson v. Watts                    CV-92-508-JD  10/30/95
                  UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE

James Johnson

        v.                              Civil No. 92-508-JD

Watts Regulator, Co., et al.


                              O R D E R


     On October 26, 1994, following a trial on the merits, the

court found that the defendants breached their insurance contract

with the plaintiff and awarded the plaintiff the face value of

the policy ($100,000) along with pre-judgment and post-judgment

interest, reasonable attorneys' fees, and court costs.  The

plaintiff has filed a motion for fees, costs, and pre-judgment

interest (document no. 93) to which the defendants have objected

(document no. 94).

     Since this action was brought pursuant to N.H. Rev. Stat.

Ann. ("RSA") § 491:22, New Hampshire law governs not only the

availability but also the determination of what is a "reasonable"

fee.  Northern Heel Corp. v. Compo Indus., Inc., 851 F.2d 456,

475 (1st Cir. 1988); see Blanchette v. Cataldo, 734 F.2d 869, 878

(1st Cir. 1984) ("where an award of fees or costs rests on state

law, state law also controls the method of calculating the size

of the award").  New Hampshire courts enjoy broad discretion when

calculating a reasonable attorney's fee, e.g., Drop Anchor Realty

Trust v. Hartford Fire Ins. Co., 126 N.H. 674, 681, 496 A.2d 339, 344 (1985) (quoting In re Bergeron Estate, 117 N.H. 963, 967, 380 A.2d 678, 681 (1977))[1], and are guided by several criteria drawn from the New Hampshire Rules of Professional Conduct:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services.

---

[1] In Drop Anchor, the New Hampshire Supreme Court stated:

> In In re Bergeron Estate, 117 N.H. 963, 380 A.2d 678 (1977), this court stated:
>
>> [t]he determination of reasonable compensation for the attorney [is] a matter resting within the sound discretion of the . . . court. Among the factors to be considered are the amount involved, the nature, novelty, and difficulty of the litigation, the attorneys' standing and the skill employed, the time devoted, the customary fees in the area, the extent to which the attorney prevailed, and the benefit thereby bestowed on the client.
>
> Id. at 967, 380 A.2d at 681 (citations omitted); see also Couture v. Mammoth Groceries, Inc., 117 N.H. 294, 296, 371 A.2d 1184, 1186 (1977); see Code of Professional Responsibility for New Hampshire Lawyers Dr 2-106(B)

126 N.H. at 681, 496 A.2d at 344.

2

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and the ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

McCabe v. Arcidy, 138 N.H. 20, 29, 635 A.2d at 452 (1993) (citations omitted); see N.H. Rules of Professional Conduct 1.5 (1990). "There can be no rigid, precise measure of reasonableness, however, because the weight accorded each factor depends on the circumstances of each particular case. McCabe, 138 N.H. at 29, 635 A.2d at 451.

Prevailing litigants, particularly in the workers' compensation area, have received attorney's fee awards based on a contingency agreement. E.g., Couture v. Mammoth Groceries, Inc., 117 N.H. 294, 296-97, 371 A.2d 1184, 1186 (1977) (award based on percentage of plaintiff's recovery held reasonable). Although the court may model a fee award after a contingency agreement, this is merely one approach and, regardless of the method of calculation, the ultimate award must be reasonable under the established criteria. See City of Manchester v. Doucet, 133 N.H. 680, 683, 582 A.2d 288, 290 (1990) ("While a contingent fee arrangement is not to be `rubber stamped,' it is one of a number

3

of factors for a court to consider in determining a reasonable fee.") (quoting Cheshire Toyota/Volvo v. O'Sullivan, 132 N.H. 168, 171, 562 A.2d 788, 790 (1989)); Corson v. Brown Prods, Inc., 120 N.H. 665, 667, 421 A.2d 1005, 1007 (1980) (rejecting argument that court is bound by contingent fee arrangement when calculating reasonable fee award under workers' compensation statute)); see also Mammoth Groceries, 117 N.H. at 296-97, 371 A.2d at 1186 (contingent fee arrangement neither per se reasonable nor per se unreasonable).

This case was filed in the state court by the plaintiff and removed to this court by the defendants on the ground that Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 applied. Defendants complain that on the day of trial plaintiff belatedly raised the issue as to the applicability of ERISA after having initially agreed that the case was governed by ERISA.

As the United States Court of Appeals for the First Circuit ("First Circuit") noted in its opinion, this case presented an issue of first impression concerning the "safe harbor" regulation (29 C.F.R. § 2510.3-1(J) (1994)) promulgated by the Secretary of Labor. Johnson v. Watts Regulator Co., 63 F.3d 1129, 1130 (1st Cir. 1995). The issue was a complex one which had to be addressed in the first instance by counsel and the trial court.

4

The court allowed the plaintiff to raise the issue even though trial was scheduled to begin. Had the court been of the opinion that plaintiff's counsel was dilatory in questioning the applicability of ERISA, it would have denied him the opportunity to do so. ERISA is a complex area of the law and problems involving its interpretation and application are not always readily discernible. In the court's opinion, the issue was important and was appropriately raised by counsel in both the trial and appellate courts and neither counsel has grounds for criticizing the other for doing so.

The court has reviewed the attorney time sheets submitted by plaintiff's counsel. Those sheets include time spent on the appeal. The First Circuit did not award attorney's fees or costs in connection with the appeal and neither will this court since there was a legitimate grounds for appeal. In addition, the court is of the opinion that RSA § 491:22-b does not provide for such an award. Therefore, the court will deduct the attorneys' fees incurred in connection with the appeal ($6,502) from the total fees claimed ($44,086), leaving a balance of $37,584.

The court finds that the number of hours spent by counsel and his associate in the preparation and trial of this case were reasonable given the various legal and factual issues that needed to be addressed. The plaintiff was an individual who suffered

5

from cognitive difficulties, which included memory problems, and this made the task of plaintiff's counsel more difficult. The defendant refused to release the plaintiff's medical records upon which the denial of his claim was based and this initially created additional work for plaintiff's counsel. The court further finds that the hourly rates charged by plaintiff's counsel and his associate are reasonable when considered in light of customary fees charged in the area for similar services and the standing and skill of counsel. While the defendants complain that plaintiff's attorneys' fees are excessive, redundant and otherwise unnecessary, they have done little to support their contentions with specific references to the time sheets. The court finds that based on the hours necessarily spent to prepare and try this case and the rates charged, plaintiff's attorneys' fees amounted to $37,584.

Plaintiff has claimed pre-judgment interest in the amount of $23,000. As noted in the court's decision on the merits, pre-judgment interest is governed by state law and is calculated from the date plaintiff filed his petition in state court (August 6, 1992) to the date of judgment in this court (October 26, 1994) at a rate of 10% simple interest. RSA § 524:1-6 (1974), § 336:1 (1984 and Supp. 1993). The defendants claim the plaintiff has

overstated pre-judgment interest. The defendants are correct. The court finds that pre-judgment interest is $22,191.78.

The court will next consider what weight to give to the contingent fee arrangement between plaintiff and his counsel. Plaintiff's counsel states in his motion (document no. 93) that he and the plaintiff had a contingent fee arrangement under which he would provide his services for 33 1/3% of the gross recovery plus costs at the trial level and 40% at the appellate level.[2] Based on a gross recovery of $122,191.78, the contingent fee would be $40,726.52. The contingent fee exceeds the time based fee by $3,142.52. The plaintiff did not have the means to retain counsel on an hourly basis, and therefore, the contingent fee agreement was entered into. Plaintiff's counsel was subjected to risk in taking the case, particularly in view of the "safe harbor" legal issue that had to be resolved on appeal. He had to devote the resources of himself and his office to the case for three years with no guarantee of recovering his fees and costs.

Informed by the considerations set forth in the Bergeron case, supra, and the New Hampshire Rules of Professional Conduct, supra, considering the risk inherent in providing representation

---

[2] The court notes that the signed fee agreement attached to plaintiff's motion provides for a 40% contingent fee with no reference to trial and appellate levels. The court will consider the lower rate of 33 1/3% referred to by counsel in his motion.

7

in this case, and the modest difference between the time based fee and the contingent fee, the court finds that the contingent fee in this case is reasonable and therefore awards the plaintiff the sum of $40,726.52 as reasonable attorneys' fees.

The plaintiff has also sought to recover certain expenses listed on his counsel's time sheets. "Under <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938), state remedies are available in federal diversity actions." <u>Titan Holdings Syndicate v. City of Keene, NH</u>, 898 F.2d 265, 273 (1st Cir. 1990) (footnote omitted).

The court will allow the following court costs to be recovered by the plaintiff:

| | | |
|---|---|---|
| 03/12/92 | Lakes Regional General Hospital medical records copies | $ 27.00 |
| 05/26/92 | Laconia Clinic medical records copies | 20.00 |
| 08/04/92 | Merrimack County Superior Court filing fee | 115.00 |
| 09/17/92 | Merrimack County Superior Court filing fee | 35.00 |
| 09/08/92 | Secretary of State filing fee | 30.00 |
| 07/07/93 | Orthopedic PA medical report | 30.00 |
| 07/21/93 | Franklin Regional General Hospital medical records copies | 29.00 |
| 09/22/93 | Paul Cotton witness fee | 30.00 |

8

```
11/09/93   Essex Process Servers; service fee    50.00
           Reginald Glover witness fee           30.00
           Elaine Prohop witness fee             50.00

11/22/93   Merrimack Sheriff service
           and travel fee                        34.50

11/22/94   Merrimack Sheriff service
           and travel fee                        34.50
              TOTAL                             $515.00
```

The plaintiff seeks to recover $2,068.80 representing his expert. The plaintiff is not entitled to recover all costs he incurred for his expert but only those costs incurred for his expert to appear and testify in the case. See State v. Wilson, 115 N.H. 99, 333 A.2d 459 (1975). Therefore, the court will allow the following expert costs for Insuring Assistance, Inc. (A. Kaufman):

```
9/20/94    Attend trial (Professional Services)
           2.2 hrs. at $70/hour          $154.00

           Travel - .9 hours at
           at $70/hour                     63.00

           Mileage - 50 at .35/mile        17.50

           Other                            1.50
              TOTAL                       $236.00
```

SO ORDERED.

                             _____
                             Joseph A. DiClerico, Jr.
                             Chief Judge

October 30, 1995
cc:  Christopher J. Seufert, Esquire
     Eleanor H. MacLellan, Esquire