Belknap
No. 2005-640

CARLOS L. MARTINEZ & a.

v.

LAURA NICHOLSON & a.

Submitted: June 8, 2006
Opinion Issued: November 22, 2006

*Hebert & Uchida, P.L.L.C.*, of Concord (*Quentin J. Blaine* by brief), for the petitioners.

*Barbara J. Griffin Law Office*, of Manchester (*Barbara J. Griffin* by brief), for the respondent, Laura Nicholson.

BRODERICK, C.J. The respondent, Laura Nicholson, appeals a superior court order granting a motion for taxation of costs filed by the petitioners, Carlos and Janet Martinez. We affirm.

The record supports the following. The petitioners (Martinez) and respondent Nicholson own adjacent properties in the Locke Lake subdivision in Center Barnstead. Martinez, claiming ownership by adverse

possession, petitioned to quiet title to a portion of property that allegedly encroached upon Nicholson's land. After a hearing on the merits, the Superior Court (*Perkins*, J.) granted the petition; Nicholson appealed and we affirmed in an unpublished order. *See Carlos L. Martinez & a. v. Laura Nicholson & a.*, No. 04-710 (N.H. July 14, 2005).

Pursuant to Superior Court Rule 87 (Rule 87), Martinez filed a motion for taxation of costs seeking $1,985.69, which included $1500 for Mark Sargent, a land surveyor with Richard D. Bartlett & Associates, who had provided expert testimony at trial. Martinez subsequently moved to amend his motion for taxation of costs to include an additional $1745 paid to Sargent that had been inadvertently omitted. The Superior Court (*Smukler*, J.) awarded the requested costs, and this appeal followed.

On appeal, Nicholson argues that the trial court erred in granting Martinez' motion because: (1) Rule 87 does not apply to equity actions; (2) "direct knowledge of the proceeding is necessary to assess and determine the reasonableness of fees," thus precluding a judge other than the presiding judge at trial from making such a ruling; (3) Rule 87 "only allows actual costs of expert witnesses if the costs were reasonably necessary to the litigation," which these were not; and (4) the expert witness costs were not directly related to Sargent's appearance in court. We address each argument in turn.

Nicholson first contends that the trial court erred because Rule 87 does not apply to equity actions. As with any other question of law, we review the trial court's interpretation of the Superior Court Rules *de novo*. *State v. Champagne*, 152 N.H. 423, 428 (2005). Rule 87, entitled "Taxation of Costs in Civil Proceedings," reads in pertinent part:

> (a) **Costs.** Costs shall be allowed as of course to the prevailing party as provided by these rules, unless the Court otherwise directs.
>
> . . . .
>
> (c) **Allowable Costs.** The following costs shall be allowed to the prevailing party: Fees of the clerk, fees for service of process, witness fees, expense of view, cost of transcripts, and such other costs as may be provided by law. The court, in its discretion, . . . may allow other costs including, but not limited to, actual costs of expert witnesses, if the costs were reasonably necessary to the litigation.

While we agree that Rule 87 allows for taxation of costs in civil cases, Nicholson's argument overlooks Superior Court Rule 116 (Rule 116), entitled "Rules for Regulating the Practice in Equity," which provides:

"The foregoing law rules with necessary changes shall also regulate the practice in equity so far as applicable, and the rules relating to equity shall, where applicable, apply with necessary changes to actions at law." We see no reason why Rule 87, in accord with Rule 116, should not apply to the underlying equity action in this case. *See Flewelling v. Roby*, 97 N.H. 97, 99 (1951) (plaintiff could maintain bill in equity to establish title by adverse possession). Indeed, "[w]here ... an equitable right has been demonstrated, the court is bound to grant every kind of remedy necessary to its complete establishment, protection, and enforcement according to its essential nature." *N.H. Donuts, Inc. v. Skipitaris*, 129 N.H. 774, 783 (1987) (quotation omitted). Accordingly, we reject Nicholson's contention that Rule 87 did not apply to the underlying equity action.

Nicholson next argues that it was error for the judge who awarded costs to do so because he had not presided over the trial and had no direct knowledge of the case. Nicholson argues that as a matter of policy, motions for costs should be reviewed by the judge who heard the case because "direct knowledge of the proceeding is necessary to assess and determine the reasonableness of fees." She further asserts that the trial court "should be directed to have the motions and objections ruled on by the original trial judge."

While we might agree that the better practice would be for the judge who presides at trial to rule on any post-trial motions for costs, we cannot agree that the failure to do so necessarily constitutes error. Nicholson cites no authority for that proposition, and we know of none. Rule 87 neither contains such a mandate, nor prohibits a judge from adjudicating the taxation of costs in a case over which he or she did not preside at trial. Nicholson makes no contention that the judge who awarded costs was unable to review the record of the proceedings to the extent necessary before issuing a ruling. Accordingly, we conclude that Nicholson has failed to demonstrate any error. *See LaMontagne Builders v. Brooks*, 154 N.H. 252, 260-61 (2006) (superior court justice who did not preside over every hearing throughout course of litigation not precluded from awarding costs and attorney's fees for proceedings conducted by a different superior court justice). We decline to exercise our supervisory authority to, in essence, amend Rule 87. Consideration of any such change is better left to the rulemaking process. *See, e.g., State v. Abram*, 153 N.H. 619, 627-28 (2006); *Petition of WMUR Channel 9*, 148 N.H. 644, 652 (2002) (Duggan, J., concurring specially); SUP. CT. R. 51.

We now turn to Nicholson's final contentions—that the trial court erred in taxing the costs for the surveyor because they were "not ... reasonably

necessary . . . to the litigation under . . . Rule 87" and they did not directly relate to the surveyor's appearance in court.

■ The award of costs lies within the sound discretion of the trial court. *Cutter v. Town of Farmington*, 126 N.H. 836, 843 (1985). Accordingly, we review the trial court's award of costs for an unsustainable exercise of discretion. *Taylor-Boren v. Isaac*, 143 N.H. 261, 266 (1998); *see State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining "unsustainable exercise of discretion" standard).

Carlos and Janet Martinez purchased their property in 1979. In 1993, Randy Orvis, a land surveyor, was hired to survey the abutting properties. Orvis relied upon the Locke Lake subdivision's recorded plan to set his reference points. After Nicholson purchased her property in 2002, she hired Brian Bailey to survey her lot and set its boundary lines. Bailey's survey suggested that a portion of Martinez' shed, fences, and property extended approximately five feet onto the Nicholson property. The Orvis and Bailey field surveys were presented at trial by Martinez and Nicholson, respectively, in support of their proposals for locating the boundary line between their properties.

Martinez hired Sargent to review the work of both Orvis and Bailey, prepare a report, and testify at trial. Sargent offered the following testimony:

> Q. In your opinion, would Mr. Bailey's method be more accurate than Mr. Orvis's method?
>
> A. In my opinion, no. I think both methods are valid. Um—my opinion always has been of Locke Lake that there are inherent problems with the plan, and, you know, based on my discussions with both these individuals, I found that—I felt that it was even—there were even more problems than I originally knew about.
>
> Q. After your discussions with Mr. Bailey, did you have any concerns about the accuracy of his method or his surveying technique?
>
> A. No, I did not.
>
> Q. So it might be safe to say that in fact both of these individuals could be correct?
>
> A. Well, I don't think it's safe to say both are correct, but I think both have valid reasoning behind what they came up with. I don't know what the true correct answer is out there. And I can't make

an opinion on that. We haven't done a boundary survey. I've just made observations in talking with these two individuals as to what their methods were, how they came about their answers, and yes, I think both of them, the way they came around to what they've determined for the corners, are both valid, valid answers.

■ Nicholson argues that fees paid to the expert surveyor were not reasonably necessary to the litigation, as Sargent's testimony "was not cited" by the trial court and was "irrelevant" to its finding of adverse possession. We disagree. Consistent with Sargent's testimony, the trial court's order referred to the difficulty of determining accurate boundary lines in the subdivision and found that neither the Orvis nor the Bailey boundary line could be presumed to be more accurate than the other. Specifically, in holding that Martinez was entitled to the disputed property by adverse possession, the court stated:

> The exact boundary lines of the two properties were strongly disputed. Both parties presented expert testimony as to the location of the boundary lines. The dispute revolves around the starting point for taking and marking measurements in the Locke Lake subdivision. The history of the surveying and the laying out of properties in Locke Lake is controversial and thus it is difficult to ascertain with accuracy the true boundary lines within the subdivision. The court finds that the fix used by Mr. Orvis is no less arbitrary than that used by Mr. Bailey, the respondent's surveyor. The discrepancy between the property lines proposed by the Bailey survey and Mr. Orvis is roughly five feet in favor of the Martinez property. The court finds that the Martinez family has used those five feet in an open, continuous, uninterrupted fashion, adverse to the interests of the true owner, in excess of twenty years.

Our review of the record indicates that the trial court could have reasonably relied upon Sargent's testimony to determine whether the Orvis or the Bailey survey more accurately reflected the actual boundary line between the Martinez and Nicholson properties. A finding that the Orvis survey was correct would have precluded the need for the trial court to adjudicate Martinez' claim of adverse possession. As such, Sargent's expert testimony, which the trial court relied upon to find that neither survey necessarily represented the true boundary lines of the properties, was reasonably necessary for the adverse possession action to go forward. We see no reason why the trial court had to directly cite Sargent's testimony for it to be of value, and the determination of the geographical

extent of the disputed property in question was clearly not "irrelevant" to the ultimate finding of adverse possession in this case.

Finally, Nicholson contends that Rule 87 limits allowable expert witness costs to those "directly related" to the witness's appearance in court. She argues that it was error for the trial court to award the additional $1745 requested in Martinez' motion to amend as that sum constituted "a pretrial expense paid directly by" Martinez. We disagree with the premise of Nicholson's argument.

In *Cutter v. Town of Farmington*, we construed the term "actual costs" under RSA 525:14-a (repealed 1989), which controlled the award of costs for expert witnesses before the adoption of Rule 87, and held that it did not include all fees paid to an expert witness. *Cutter*, 126 N.H. at 843-44; *see Flanagan v. Prudhomme*, 138 N.H. 561, 577 (1994). Instead, we stated that the reasonable charges for expert witnesses properly lying within the discretion of the trial court to award were limited to those charges incidental to appearing and testifying before judicial or administrative bodies. We also stated that other expert witness charges, such as those for pretrial conference work, should not be allowed. *Cutter*, 126 N.H. at 843-44. In *Flanagan*, we stated that "actual costs" under the statute were "limited to those charges *directly related* to the witness's appearance and testimony in court." *Flanagan*, 138 N.H. at 577 (emphasis added). We added that the same limitation on "actual costs" of expert witnesses also applied to Rule 87(c). *Id.* Thus, under Rule 87(c), "actual costs of expert witnesses" are limited to those charges "directly related" to the expert witness's appearance and testimony in court, and do not include charges such as those related to pretrial conference work. *See id.*

■ Here, Martinez has indicated that the $1745 paid to Sargent was for "time spent reviewing the work of the two surveyors who presented plans pertaining to the boundary line between the parties' lots, preparing a report, and testifying about the results of his review." In addition, nothing in the record indicates that the $1745 cost included in the motion to amend was related to any pretrial conference work. Nicholson has provided nothing to refute this and merely claims that the cost should not have been allowed because it was "a pre-trial expense." Nothing in our case law prohibits the award of costs for the pretrial expenses of an expert witness as long as those expenses directly related to the witness's appearance and testimony in court.

It is not the function of this court to scrutinize on appeal every prevailing party's laundry list of costs at the behest of the losing party, and we do not intend to do so, mindful as we are that such decisions are best left to the discretion of the trial court.

*Cutter,* 126 N.H. at 843. Given all of the above, we cannot say that the trial court engaged in an unsustainable exercise of discretion in allowing the requested costs for the expert witness.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.